En el Tribunal Supremo de Puerto Rico

| Carlos L. Pérez Rosado y otros<br>        Recurrentes<br><br>        V.<br><br>El Vocero de Puerto Rico, Inc. y otros<br>        Recurridos | Revisión<br><br>99 TSPR 154 |
| --- | --- |

Número del Caso: RE-1994-0481 y CE-1994-0738

Abogados de la Parte Recurrente:      Lcdo. Juan R. Marchand Quintero
                                      Lcdo. José E. Colón Rodríguez
                                      Lcdo. Francisco Ortiz Santini

Abogados de la Parte Recurrida:       Lcdo. Javier Cuevas Silva
                                      Lcda. Rebecca Guerrios Rodríguez

Tribunal de Primera Instancia, Sala Superior de Bayamón

Juez del Tribunal de Primera Instancia: Hon. Zulma Zayas Puig

Fecha: 10/11/1999

Materia: Daños y Perjuicios

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos L. Pérez Rosado y Otros

    Recurrentes

RE-94-481
CE-94-692

       v.

El Vocero de Puerto Rico, Inc.
y Otros

    Recurridos

Opinión del Tribunal emitida por la Juez Asociada señora Naveira de Rodón.

San Juan, Puerto Rico, a 11 de octubre de 1999

Este caso nos brinda la oportunidad de aclarar la doctrina prevaleciente en casos de libelo por la publicación de imágenes y de delimitar el alcance de la forma especial en que funciona el mecanismo de sentencia sumaria en casos que involucran el ejercicio de la libertad de expresión y prensa.

I

El martes 6 de octubre de 1992, el periódico El Vocero publicó en su página número dos (2) un artículo titulado "Confiscan bienes [por] $1 millón".

El artículo trataba sobre la confiscación de cuatro lujosas mansiones que pertenecían a los cabecillas del Cartel de Cali y relataba como sus "tenebrosos" propietarios lavaban dinero producto del narcotráfico mediante la compra de bienes raíces. El artículo también hacía referencia a ciertos detalles de la operación dirigida por el jefe del Cartel de Cali en Nueva York, entre ellos, los contratos con gatilleros para cobrar deudas de drogas con vidas.

Junto al referido artículo, y como ilustración al mismo, se publicaron dos fotos. Una foto mostraba una de las residencias confiscadas, mientras que la otra correspondía al rostro del supuesto propietario. A este último se le identificaba en la nota al calce como "Ramiro Herrera, jefe del Cartel de Cali en Nueva York". (Véase Exhibit 1). En realidad, la fotografía publicada correspondía a la imagen del comerciante Carlos Pérez Rosado, quien hasta ese momento era una figura privada y nunca había aparecido en medio de comunicación alguno. Al día siguiente, y en atención a una petición que hiciera el señor Pérez Rosado a través de su abogada, El Vocero publicó una nota en la que aclaró el error cometido. (Véase Exhibit 2).

Aparentemente, El Vocero obtuvo la fotografía publicada de las residencias del narcotraficante. El señor Pérez Rosado, quien es dueño de un negocio de decoración de interiores, expuso bajo juramento que fue

contratado para decorar una de las mansiones y que su esposa dejó en ella un paquete de fotos como muestra de los trabajos que la empresa realizaba. Dicho paquete debió contener la foto publicada, ya que en el negocio del señor Pérez Rosado él y sus empleados acostumbraban tomarse fotos jocosas "para acabar los rollos". El señor Pérez Rosado pudo identificar que la fotografía se tomó en su oficina gracias a los diplomas que se ven en el fondo de la misma. (Véanse Exhibits 1 y 2).[1]

A raíz de los hechos relatados, el 3 de octubre de 1993, el señor Pérez Rosado y su esposa, Pilar Moreno Rodríguez, ambos por sí y en representación de la sociedad de gananciales y de sus tres hijos menores, presentaron una demanda de daños y perjuicios por libelo contra el periódico El Vocero y el periodista Miguel Puig. Alegaron que El Vocero, de manera falsa, libelosa y negligente, vinculó la imagen del señor Pérez Rosado con el narcotráfico y que lo describió como un personaje tenebroso. Argumentaron que la negligencia consistió en que el redactor de la noticia no verificó la identidad del fotografiado. Reclamaron indemnización por haber sufrido diversos tipos de daños, entre ellos, daños a su reputación, daños emocionales y angustias debido al

---

[1] Esta explicación fue dada por el señor Pérez Rosado en su deposición y posteriormente fue admitida por El Vocero en su alegato ante nos. Ello, a pesar de que en el interrogatorio contestado por el sub-director del periódico, éste declaró que el fotoperiodista Rafael Angel Rivera tomó la fotografía.

temor por su seguridad personal. El Vocero contestó negando malicia y negligencia e invocando su derecho constitucional a libertad de prensa y expresión como defensa. Posteriormente se desistió la demanda contra el periodista.

Tras varios trámites procesales y una conferencia con antelación al juicio, el 24 de febrero de 1994 el señor Pérez Rosado presentó una moción de sentencia sumaria parcial en la cual solicitó que se adjudicara la negligencia imputada al periódico y se señalara vista para determinar la cuantía de los daños. En apoyo a la referida solicitud, el señor Pérez Rosado presentó copia de la contestación a la demanda, copia del requerimiento de admisiones cursado al periódico y la contestación a dicho requerimiento de admisiones, la cual incluía copia de la nota aclaratoria. Alegó que la nota aclaratoria constituía una admisión de parte del periódico, la cual establecía la negligencia imputada, y que ésta era admisible en evidencia bajo la Regla 62(A) de Evidencia. El Vocero, por su parte, refutó los planteamientos y alegó que la nota aclaratoria resultaba inadmisible de acuerdo con la Regla 22 (A) de Evidencia por tratarse de una reparación o precaución posterior.

El 8 de abril de 1994, El Vocero presentó una moción para que se dictara sentencia sumaria a su favor. Basó su solicitud en las defensas de que la noticia publicada era de amplio interés público y no resultaba difamatoria.

Además, adujo la inexistencia de daños a la reputación del señor Pérez Rosado y que el error en la publicación de la foto había ocurrido sin que mediara previo conocimiento ni malicia real.  En apoyo a la moción, El Vocero anejó copia de la noticia, de la nota aclaratoria, de la deposición tomada al señor Pérez Rosado, del primer pliego de interrogatorios que se le cursó al periódico y de las correspondientes contestaciones provistas por su director asociado, el Sr. Germán Martínez Negroni.

El foro de instancia celebró una vista en la que cada parte argumentó su respectiva moción.  Después de ésta, el señor Pérez Rosado presentó oposición a que se dictara sentencia sumaria.  Tanto en la vista, como en su escrito de oposición, le indicó al Tribunal que no había podido completar su descubrimiento de prueba.  Entre las deposiciones que le faltaba por tomar se encontraba la del Sr. Germán Martínez Negroni, quien por razones de salud no pudo asistir en las ocasiones en que fue citado. Ahora bien, en vez de solicitarle al tribunal que a tenor con lo dispuesto en la Regla 36.6 de las de Procedimiento Civil, 32 LPRA Ap. III, pospusiera la resolución de las solicitudes de sentencia sumaria, el señor Pérez Rosado se limitó a reservarse el derecho de tomar la deposición si la negligencia no se adjudicaba por la vía sumaria. La reserva la estableció en atención a su contención de que, para la época de los acontecimientos, el periódico no tenía establecido un procedimiento para corroborar la

veracidad de la información, incluyendo la adecuada identificación de fotografías.

El 3 de agosto de 1994, el antiguo Tribunal Superior Sala de Bayamón dictó sentencia sumaria a favor de El Vocero y desestimó la demanda de libelo presentada por el señor Pérez Rosado. El tribunal de instancia determinó que la publicación de una nota aclaratoria no equivalía a una admisión de negligencia. Además, concluyó que la noticia publicada no resultaba difamatoria de su faz con respecto al señor Pérez Rosado.

El tribunal llegó a esta última determinación sin hacer análisis alguno de la noticia en controversia, ni de la doctrina jurisprudencial que define la difamación per se. La sentencia tampoco examinó ni analizó los documentos sometidos por las partes junto con sus respectivas solicitudes. Finalmente, el foro de instancia dictaminó que el señor Pérez Rosado no demostró negligencia en la publicación durante la etapa de sentencia sumaria.

Inconforme, el 5 de octubre de 1994, el señor Pérez Rosado acudió ante nos mediante el presente recurso de Revisión. Nos señala como único error adujo que el Tribunal Superior incidió al dictar sentencia sumaria y desestimar su causa de acción.[2] Como fundamento insiste

_____

[2] El señalamiento de error lee:

Incidió el Honorable Tribunal de Instancia al emitir sentencia sumaria desestimando [sic] la causa de acción de la parte demandante, a pesar de que la demandada-

en que El Vocero admitió negligencia al reconocer error en la publicación por medio de la nota aclaratoria.

Concordamos con el tribunal de instancia en que la nota aclaratoria no constituye prueba de negligencia. Sin embargo, diferimos del mencionado foro en cuanto a su su interpretación de la Regla 22 (A) de las de Evidencia, 32 L.P.R.A., Ap. IV R 22(A).

Además, al examinar la noticia a la luz del derecho aplicable, no albergamos duda de que la yuxtaposición de la fotografía del señor Pérez Rosado con la nota al calce y el artículo resulta difamatoria de su propia faz. Más aún, después de analizar ponderadamente la totalidad de los documentos que obran en el expediente, somos de la opinión que el foro de instancia abusó de su discreción al desestimar el presente caso de forma sumaria en esta etapa de los procedimientos. A nuestro entender, dicho foro dictó sentencia sumaria <u>de forma prematura y sin tomar en consideración toda la evidencia admisible aportada por las partes</u>.

Por lo tanto, y a base de los fundamentos que esbozamos a continuación, revocamos.

II

En su recurso el señor Pérez Rosado insiste en que la nota aclaratoria publicada por el periódico tuvo el

---

recurrida admitió su negligencia en la publicación, que ésta resultaba difamatoria y falsa y, al negarse a dictar sentencia sumaria a favor de la demandante-recurrente.

efecto de establecer, por vía de admisión, la actuación negligente que da base a su causa de acción. Ello, al amparo de la Regla 62(A) de las de Evidencia, 32 L.P.R.A., Ap. IV, R 62(A). El Vocero por su parte, se opone al planteamiento y aduce que la nota aclaratoria resulta inadmisible bajo la Regla 22(A) de las de Evidencia, supra. A ninguno de los dos le asiste la razón. Veamos.

La Regla 22 de las de Evidencia, supra, establece varias situaciones en las que, debido a consideraciones extrínsecas a la búsqueda de la verdad, se excluye evidencia a pesar de su pertinencia. Ello, como excepción al principio general que rige nuestro ordenamiento evidenciario de que toda prueba pertinente debe resultar admisible. Con estas exclusiones se pretende fomentar ciertas actuaciones en beneficio del interés público. El inciso (A) la Regla 22 excluye prueba sobre reparaciones o precauciones posteriores a un evento, que se pretendan presentar para establecer conducta negligente o culposa respecto a la ocurrencia del mismo. Al respecto la Regla 22(A) dispone:

> Cuando después de la ocurrencia de un evento se toman medidas de reparación o precauciones **las cuales, de haber sido tomadas anteriormente, hubieran tendido a hacer menos probable la ocurrencia del evento**, evidencia de dichas medidas posteriores es inadmisible para probar negligencia o conducta culpable en relación al evento. Esto no impide que tal evidencia sea admisible a otros fines pertinentes. (Énfasis suplido.) Regla 22(A), supra.

La consideración de política pública que fundamenta esta exclusión es alentar el que las partes tomen medidas cautelares de reparación o precaución tras la ocurrencia del evento que da base a la reclamación. De esta manera se evitan accidentes o daños futuros.

Ahora bien, del texto de la Regla 22(A) se desprende claramente que deben cumplirse cuatro requisitos para que determinada evidencia resulte inadmisible al amparo de dicha disposición. A saber, (i) que la evidencia se refiera a medidas de reparación o precaución; (ii) que dichas medidas se hayan tomado con posterioridad con el evento en controversia; (iii) que dicha evidencia se presente con el propósito de probar culpa o negligencia en relación al evento y (iv) **que se trate de medidas que, de haber sido tomadas con anterioridad al evento, hubieran tendido a hacer menos probable su ocurrencia**.

En el caso que nos ocupa, no existe duda de que la nota aclaratoria constituye una medida de reparación tomada por El Vocero con posterioridad a la publicación de la información que se alega difamatoria. Tampoco hay duda en cuanto al hecho de que el señor Pérez Rosado ha intentado presentar dicha nota como evidencia para probar que el periódico fue negligente al identificar erróneamente su foto y al publicarla. Sin embargo, el último requisito dispuesto expresamente por la Regla 22(A) se encuentra ausente. <u>La publicación de una nota</u>

<u>aclaratoria con anterioridad al evento difamatorio en forma alguna hubiera tendido a hacer menos probable su ocurrencia</u>. Esto es, la nota aclaratoria no es una medida que, de haberse tomado antes, hubiese tendido a evitar la publicación difamatoria. Resulta pues, forzoso concluir que la nota aclaratoria no constituye evidencia inadmisible al palio de la Regla 22 (A).

No obstante, tampoco puede utilizarse dicha nota para probar negligencia bajo la Regla 62(A), como pretende hacer el señor Pérez Rosado. Ciertamente en la nota aclaratoria El Vocero admite que cometió un error en la identificación de la foto en controversia. Ello, sin embargo, no es lo mismo que admitir que medió negligencia en la comisión del referido error. Sobre todo en casos de libelo, en los que se requiere prueba de ciertos elementos específicos para demostrar negligencia en la publicación. Dicha nota resulta pertinente y admisible sólo para probar que se cometió un error en la identificación, no constituye prueba de que El Vocero incurrió en negligencia.

Aclarado lo anterior, pasemos a examinar si la controvertida publicación resulta difamatoria y si procedía la desestimación sumaria decretada por el foro a quo.

III

La difamación en el ámbito civil se ha definido como "desacreditar a una persona publicando cosas contra su reputación".[3] En Puerto Rico, hemos reconocido la acción de daños y perjuicios por difamación. Ésta es una acción torticera genérica que incluye tanto el libelo como la calumnia. Para que proceda una acción de libelo se requiere que exista un récord permanente de la expresión difamatoria. La calumnia, por su parte, se configura con la mera expresión oral difamatoria. Ojeda v. El Vocero de P.R., res. 26 de octubre de 1994, 137 D.P.R. ___ (1994), 94 J.T.S. 131.

Nuestra Ley de Libelo y Calumnia[4], reconoce que el libelo puede darse de diversas maneras,

> ...por escrito, impreso, signo, **retrato**, figura, efigie u otro medio mecánico de publicación, **tendente a** exponer a dicha persona al odio del pueblo o a su desprecio, o a privarle del beneficio de la confianza pública y trato social, o a perjudicarle en sus negocios; o de otro modo desacreditarle, menospreciarle, o deshonrarle... 32 L.P.R.A. 3142. (Énfasis suplido.)

La fuente primaria de protección contra injurias es el Art. II, Sec. 8 de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. Art. II, sec. 18. Este artículo desplaza a la Ley de Libelo y Calumnia de 1902 (32 L.P.R.A. sec. 3141 et seq.), la cual sobrevive

---

[3] Ignacio Rivera García, Diccionario de Términos Jurídicos, Equity Publishing Corp (1985).

[4] 32 L.P.R.A. sec. 3141 et seq.

solamente en tanto y en cuanto es compatible con la Constitución. Méndez Arrocho v. El Vocero de P.R. 130 DPR 867 (1992).

En los casos de libelo se enfrentan dos derechos constitucionales de la más alta jerarquía en nuestro ordenamiento, a saber, el derecho a la libertad de expresión y de prensa y el derecho a la intimidad. En consecuencia, estos casos requieren que el juzgador haga un delicado balance de intereses. Por un lado, se encuentra el interés de la ciudadanía en estar debidamente informada y a que se fomente un debate vigoroso sobre las cuestiones de interés público, elementos imprescindibles para la preservación de una democracia participativa. Por otro lado, están la protección contra ataques abusivos a la honra, la reputación, la vida privada y familiar y la inviolabilidad de la dignidad del ser humano.

Para que prospere una acción de libelo en el caso de una figura privada es necesario que la persona difamada alegue y pruebe en esencia tres requisitos: (1) que la información es difamatoria y falsa; (2) que la publicación se hizo de forma negligente y (3) que se le causaron daños reales. En nuestra jurisdicción está firmemente establecido que en casos de figuras privadas, la acción de libelo es una de daños y perjuicios basada en negligencia, y no en malicia real, que es el quantum de prueba exigido a la figura pública. Villanueva v.

Hernández Class, 128 D.P.R. 618 (1991); González Martínez v. López, 118 D.P.R. 190, 192-193 (1987), Torres Silva v. El Mundo, 106 D.P.R. 45 (1977).

Jurisprudencialmente, hemos distinguido entre publicaciones que son libelosas per se y aquellas que, por no ser difamatorias de su faz, se designan libelosas *per quod*. En casos de libelo per se no se exige alegación ni prueba especial de daños. Véase, Bosch v. Editorial El Imparcial, 87 D.P.R. 281 (1963). Entre otras, hemos considerado libelosa de su propia faz a la publicación que imputa la comisión de un delito. Pueblo v. Prensa Insular, 69 DPR 683 (1949); Rivera v. Martínez, 26 DPR 760 (1918). Sin embargo, no es necesario que ésta impute un delito para que sea libelosa. "Es suficiente **que tienda** a desacreditar, menospreciar, o deshonrar o a exponer a la persona al odio del pueblo o a su desprecio, o a privarle de la confianza pública y trato social, o a perjudicarle en sus negocios." Bosch v. Editorial El Imparcial, Inc., supra. (Énfasis suplido.)

A pesar de éstos claros parámetros jurisprudenciales, el foro de instancia determinó que la publicación que nos concierne no es libelosa de su propia faz. No podemos estar de acuerdo. Tan sólo de mirar la noticia publicada, resulta evidente que la yuxtaposición de la foto del rostro del señor Pérez Rosado con un artículo y nota al calce que lo describe

como un narcotraficante cabeza del Cartel de Cali tiene el resultado práctico de imputarle la comisión de un delito a su imagen.[5]

No debe confundirse el derecho a la propia imagen con el libelo. La publicación de la imagen de una persona puede dar lugar a dos tipos de acciones en daños, ambas acciones derivadas del derecho a la intimidad. En Colón v. Romero Barceló, 112 D.P.R. 573 578-579 (1982), reconocimos el derecho que tiene una persona a controlar dónde, cuándo y cómo se le toma una fotografía o se reproduce de cualquier forma su imagen. Algunos de los rasgos que diferencian la acción en daños derivada de la violación al derecho a la propia imagen del libelo son: (i) que no se trata de una publicación en ejercicio de la libertad de prensa, pues es una persona o entidad particular quien promueve la publicación; (ii) la acción en daños por violación al derecho de propia imagen no requiere que la reproducción tenga impacto ofensivo alguno; y (iii) la verdad no es defensa.

El hecho de que tanto el calce de la foto, como el artículo se refieran a una persona de nacionalidad colombiana y de nombre distinto, no elimina el que la imagen del demandante haya sido lesionada. En Romany v. El Mundo, 89 D.P.R. 604 (1963), resolvimos que el periódico demandado en libelo debía responder por los

---

[5]  Véase Exihibit 1.

daños causados a un abogado cuya fotografía fue publicada y se le identificó como otro abogado que había cometido un delito público. Al igual que en el caso de autos, en aquella ocasión el periódico publicó una corrección.

Resulta insostenible la alegación por parte del periódico de que la reputación del señor Pérez Rosado no se vio afectada por la publicación de su foto como ilustración de un artículo sobre un narcotraficante de las altas esferas de uno de los carteles de drogas más grandes y temidos del mundo. Aunque la foto y el artículo examinados de forma independiente no resultan difamatorios, vistos en conjunto, como de hecho fueron publicados, por asociación, se le imputa a la imagen del señor Pérez Rosado la comisión de un delito grave como lo es el trasiego de drogas. Este Tribunal ha reconocido este tipo de difamación contextual desde Pueblo v. Prensa Insular, 69 D.P.R. 683 (1949). En aquella ocasión determinamos que una caricatura de unos jugadores de balompié que se ponían de acuerdo para realizar una jugada mientras le daban la espalda al balón del interés público, "considerada conjuntamente con los artículos publicados", resultaba libelosa.

El vincular la imagen del señor Pérez Rosado a la comisión de delitos tan repudiados por la sociedad como lo son el narcotráfico y el lavado de dinero, no sólo

resulta libeloso per se, sino que pudo haber puesto en riesgo su seguridad personal y la de su familia.

Pasemos a considerar si el foro de instancia erró al decidir el presente caso por sentencia sumaria en esta etapa de los procedimientos.

IV

La sentencia sumaria es un mecanismo procesal que confiere al juzgador discreción para dictar sentencia sin necesidad de celebrar vista evidenciaria. El tribunal, en el ejercicio de su discreción, puede dictarla sobre la totalidad de una reclamación o sobre cualquier controversia comprendida en ella, cuando de los documentos admisibles en evidencia que se acompañan con la solicitud o que obran en el expediente del tribunal surge que no existe una legítima disputa de hechos que tenga que ser dirimida en vista evidenciaría y que sólo resta aplicar el derecho. Audio Visual Lang. v. Sist. Est. Natal Hnos., Op. de 15 de diciembre de 1997, 144 D.P.R. ___ (1997), 97 J.T.S. 147; Mercado Vega v. U.P.R., 128 D.P.R. 273, 281 (1991); Nassar Rizek v. Hernández, 123 D.P.R. 360, 378 (1989); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986). Las Reglas 36.1 y 36.2 de Procedimiento Civil, supra, permiten tanto a la parte demandante como a la demandada

en un pleito presentar moción para que se dicte sentencia sumaria a su favor.

Sin embargo, debe tenerse presente que la sentencia sumaria sólo debe dictarse cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba. Medina v. M. S.& D. Química de P.R., Inc., res. el 4 de abril de 1994, 135 D.P.R. ___ (1994), 94 JTS 52. Tiene, pues, el promovente de la moción la carga inicial de la prueba. Además, de ordinario, el tribunal examinará la evidencia ante sí de la forma más favorable al promovido. Véase, la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

En reclamaciones de difamación contra la prensa, hemos señalado que el mecanismo de la sentencia sumaria es "parte integral de la protección constitucional disponible a los demandados en éste genero de litigios". Clavell v. El Vocero de P.R., 115 D.P.R. 685, 696 (1984) (Énfasis suplido.) La prolongación de esta clase de litigios puede tener un efecto disuasivo sobre el ejercicio de los derechos de libertad de expresión y prensa. En atención a ello, jurisprudencialmente, hemos establecido que las normas aplicables a la figura procesal de la sentencia sumaria serán interpretadas de forma más rigurosa a favor del periódico promovente. Véanse, Villanueva v. Hernández Class, supra; Mendez

Arrocho v. El Vocero de P.R, supra.  En la práctica esto
ha significado que, en vez de examinar la evidencia ante
sí de la forma más favorable al demandante promovido, el
juzgador le ha exigido a éste un mayor rigor en su
oposición para que pueda derrotar la moción de sentencia
sumaria del periódico.

Sin embargo, el que la sentencia sumaria sea parte
de la protección constitucional de los medios de
comunicación en casos de libelo y que se exija mayor
rigor para derrotar una solicitud, no significa que por
el mero hecho de tratarse de un periódico, tenga derecho
a un dictamen favorable.  Tampoco significa que deban
alterarse las disposiciones de procedimiento civil que
regulan el funcionamiento de este mecanismo procesal
extraordinario.  El periódico, como cualquier otro
promovente de una solicitud de sentencia sumaria, tiene
la carga inicial de la prueba para apoyar las defensas
alegadas.

El periódico tiene dos maneras de cumplir con su
carga probatoria inicial.  Primero, puede establecer, ya
sea a base de los documentos que presenta o de los que
obran en autos, que no existe controversia real
sustancial en cuanto a ningún hecho material y que, como
cuestión de derecho, procede dictar sentencia a su
favor.  En reclamaciones de libelo, bastaría con que el
periódico pueda demostrar de forma incontrovertida que
alguno de los elementos esenciales de la acción no está

presente. En realidad, se trata de que el periódico pueda probar alguna de las defensas que lo cobijan en reclamaciones de libelo. Así pues, el periódico podría probar de forma afirmativa que la información publicada no es difamatoria, o que es verdadera. Puede también presentar evidencia de que fue diligente al publicar o de que la publicación no causó daños al demandante.

La segunda forma en que el periódico puede cumplir su carga inicial como promovente de una moción de sentencia sumaria, es fundamentar su solicitud en que la parte demandante no cuenta con evidencia suficiente para probar su caso. Para que el tribunal pueda dictar sentencia sumaria por insuficiencia de la prueba, el periódico promovente tendrá que persuadirlo de cada uno de los siguientes elementos: (i) que no es necesario celebrar una vista evidenciaria; (ii) que el demandante promovido no cuenta con evidencia suficiente para probar algún hecho esencial; y (iii) que como cuestión de derecho, procede la desestimación de la reclamación. Véase Medina v. M. S.& D. Química de P.R., Inc., supra, págs. 11787.

En todo caso, para evaluar adecuadamente una solicitud de sentencia sumaria en la modalidad de insuficiencia de la prueba, resulta indispensable que se le haya brindado al promovido una amplia oportunidad de realizar un descubrimiento de prueba adecuado. De hecho, como parte de su carga inicial de la prueba, el

promovente de una moción de sentencia sumaria por insuficiencia de la prueba tiene que <u>probar afirmativamente</u>,

> ...que se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado, o sea que ha explorado concienzudamente la posibilidad de evidencia admisible. <u>Medina</u> v. <u>M. S.& D. Química de P.R., Inc.</u>, supra, pág. 11788.

En suma, bajo la modalidad de sentencia sumaria por insuficiencia de la prueba, el promovente tiene que poner al tribunal en la posición de evaluar la adecuacidad del descubrimiento de prueba realizado hasta ese momento y de concluir que el promovido no cuenta con evidencia suficiente. La necesidad de permitir un descubrimiento de prueba adecuado cobra especial relevancia en casos de libelo contra un periódico, pues la <u>prueba necesaria para sustentar la alegación de negligencia del demandante, usualmente, se encuentra bajo el control exclusivo del periódico demandado</u>.

V

En casos de libelo, una vez el periódico cumple con su carga inicial como promovente de la moción de sentencia sumaria, entonces se transfiere la carga de la prueba al promovido. Éste es el momento procesal en que el juez exigirá mayor rigor al promovido para prevalecer. Para derrotar la moción de sentencia

sumaria del periódico, el promovido tiene que: (i) controvertir los hechos que prueban la defensa del periódico; o, (ii) cuando la moción alude a la insuficiencia de la prueba, debe demostrar que cuenta con evidencia suficiente que, de ser admitida y creída en su día, probaría los elementos constitutivos de negligencia o malicia real; o, debe establecer que aún no ha podido hacer un descubrimiento de prueba adecuado que le permita obtener evidencia para probar su caso. La cuestión de suficiencia de prueba de negligencia en estos casos es una estrictamente de derecho.

Los criterios a considerarse para determinar negligencia en la publicación de información difamatoria respecto a una persona privada son: (i) la naturaleza de la información publicada, la importancia del asunto de que se trata y especialmente si ésta es difamatoria de su propia faz y puede preverse el riesgo de daños, (ii) origen de la información y confiabilidad de su fuente y (iii) razonabilidad del cotejo de la veracidad de la información tomando en consideración el costo en términos de dinero, tiempo, personal, urgencia de la publicación, carácter de la noticia y cualquier otro factor pertinente. Torres Silva v. El Mundo, Inc., 106 D.P.R. 415 (1977).

La evidencia que el promovido presente para derrotar la solicitud de sentencia sumaria por insuficiencia de

la prueba puede tomar varias formas.  El promovido
puede:

> Presentar con su oposición prueba admisible en
> evidencia; o que dé lugar a prueba admisible
> que demuestre que existe evidencia para probar
> los elementos esenciales de su caso; o que hay
> prueba en el récord que puede convertirse en
> prueba admisible y que derrotaría la
> contención de insuficiencia del promovente;
> Medina v. M. S.& D. Química de P.R., Inc.,
> supra.

Además de lo anterior, el promovido puede derrotar
la solicitud de sentencia sumaria por insuficiencia de
la prueba del periódico demostrándole al tribunal que no
ha podido realizar un descubrimiento de prueba adecuado.
Tal como indicamos en Medina v. M. S.& D. Química de
P.R., Inc., supra, un promovido puede derrotar una
moción de sentencia sumaria por insuficiencia
demostrando que "la moción es prematura porque el
descubrimiento es inadecuado, está a medias o no se ha
realizado". (Énfasis suplido.) Reconocimos, pues, la
importancia de permitir un descubrimiento de prueba
adecuado antes de resolver una moción de sentencia
sumaria por insuficiencia de la prueba.  Acoger una
moción de sentencia sumaria de forma prematura puede
tener el efecto de privar al promovido de sus derechos
sin un debido proceso de ley.

Las propias reglas de procedimiento civil contemplan
la situación en que el promovido por una moción de
sentencia sumaria no ha tenido la adecuada oportunidad

de conseguir prueba para apoyar alguno de los hechos esenciales que justifican su oposición y proveen al tribunal un mecanismo para remediar la situación. La Regla 36.6 dispone que, "el tribunal podrá denegar la solicitud de sentencia sumaria, o podrá ordenar la suspensión de cualquier vista para que la parte pueda obtener declaraciones o tomar deposiciones, o conseguir que la otra parte le facilite cierta evidencia, o podrá dictar cualquier otra orden que sea justa". Regla 36.6 de Procedimiento Civil, supra. En otras palabras, confrontado el tribunal con una solicitud de sentencia sumaria prematura, éste puede, en el ejercicio de su discreción, posponer la evaluación de la moción o denegarla en esa etapa de los procedimientos. Hay que tener presente que el propósito de las reglas procesales es viabilizar el que los tribunales hagan justicia al resolver las controversias.

VI

En el presente caso, el periódico intenta cumplir con su carga inicial de la prueba demostrando que el señor Pérez Rosado no contaba con prueba suficiente <u>de negligencia</u>.[6] Pasemos a considerar este planteamiento a

---

[6] El periódico además interpone varias defensas afirmativas: que el error en la identificación ocurrió sin malicia ni grave menosprecio a la verdad; que la información no resultaba difamatoria y era de amplio

la luz de los tres elementos de negligencia en la publicación mencionados anteriormente.

En cuanto al primer elemento, la naturaleza de la información publicada, un análisis detenido de la publicación refleja, como vimos, que ésta era difamatoria de su faz. Además, resultaba previsible que la identificación errónea de una persona como un criminal causaría daños al ciudadano inocente cuya imagen se empaña. El riesgo de daños cobra especial relevancia en un caso como el de autos, donde el delito con el cual se vincula el rostro del señor Pérez Rosado ha cobrado tantas vidas en Puerto Rico. La publicación pudo haber puesto en grave riesgo la seguridad del señor Pérez Rosado y su familia.

En cuanto al segundo elemento, origen de la información y la confiabilidad de la fuente, de los documentos en autos se desprende que la fotografía se obtuvo como producto del allanamiento de la residencia de un narcotraficante. Entendemos que la información

---

interés público; y que la reputación del demandante no sufrió daños.

La primera defensa no aplica al caso de autos por tratarse éste de una figura privada. En cuanto a los daños, cabe señalar que por ser esta una reclamación bajo el Art. 1802 del Codigo Civil, 31 L.P.R.A. sec. 5141, los daños no se limitan al menoscabo a la reputación. Además, nos encontramos ante una publicación que, a pesar de ser de interés público, resulta libelosa de su faz, por lo que no era necesario ni alegar, ni probar daños especiales. El periódico no aportó prueba incontrovertida en apoyo de las restantes defensas afirmativas.

recibida de autoridades, <u>por lo general</u>, debe resultar confiable.

Ahora bien, al analizar el tercer y último criterio, la razonabilidad del cotejo de veracidad, nos percatamos de que en el récord del tribunal no existe suficiente evidencia para apreciar si la identificación fue adecuada o no. El Vocero tampoco ha puesto al tribunal en condición de concluir que el señor Pérez Rosado tuvo la oportunidad de hacer un descubrimiento adecuado de prueba en cuanto a este extremo.

El señor Pérez Rosado fundamenta su reclamación precisamente en que, a la fecha de publicación del artículo en controversia, El Vocero no contaba con un método adecuado de identificación de fotografías. La evidencia para probar este elemento de la negligencia, está en poder del periódico demandado. Por lo tanto, resultaba esencial poder deponer a los empleados del periódico que conocían el procedimiento de publicación. Surge del expediente que en reiteradas ocasiones el señor Pérez Rosado puso al tribunal en conocimiento de que, <u>por razones atribuibles exclusivamente al periódico</u>, no había podido tomar las deposiciones a los empleados y directivos de El Vocero. Además, le indicó al tribunal que con dichas deposiciones probaría el hecho "de que el periódico, para la época de los acontecimientos no [tenía] establecido un procedimiento para corroborar la veracidad de la información

incluyendo la adecuada identificación de fotografías, como la que nos ocupa."

Las deposiciones que faltaban por tomar tenían el potencial de probar que el periódico no efectuó una corroboración razonable y adecuada. Ello, junto a los otros elementos constitutivos de negligencia presentes en el caso de autos, hubiesen sido suficiente para derrotar la solicitud de sentencia sumaria del periódico. No obstante, y a pesar de la solicitud del señor Pérez Rosado de que se le permitiera completar un descubrimiento de prueba adecuado, el foro de instancia decidió adjudicar el caso de forma sumaria.

El mayor rigor que se debe exigir al promovido para derrotar la solicitud de sentencia sumaria interpuesta por un periódico, no exime a este último de cumplir con su carga de la prueba como promovente, ni releva al juez de considerar la totalidad de la evidencia admisible en autos al entender en la moción. Tampoco significa que el juez deja de tener discreción para decidir si el momento en que el periódico interpone la solicitud es el apropiado para decidir el caso por el mecanismo de sentencia sumaria.

Una simple alegación de insuficiencia de prueba no basta para que el periódico descargue su responsabilidad inicial. El Vocero no ha demostrado que se efectuó un descubrimiento de prueba completo y adecuado. Bajo las circunstancias del presente caso, es forzoso concluir

que la solicitud de sentencia sumaria fue prematura, y que El Vocero no cumplió con su carga inicial como promovente.

No pretendemos imponer a la prensa del país el oneroso gravamen de verificar la certeza de cada uno de los hechos e imágenes que publica a diario. Estamos conscientes de que la prensa trabaja con grandes limitaciones y que en muchas ocasiones la corroboración se hace difícil o imposible. Sin embargo, es innegable que la prensa, además de ofrecer un servicio indispensable, ostenta un poder inconmesurable. Este poder lleva aparejado una gran responsabilidad y debe ejercerse de forma consciente.

Con relación a aquellas noticias con alto potencial de ser difamatorias, los medios deben ejercer un grado mayor de diligencia y sopesar los intereses en conflicto. Un error, por descuido o negligencia, puede destruir reputaciones o hasta poner vidas en grave peligro, como ocurrió en el caso de autos. La razonabilidad del proceso de publicación y cotejo de veracidad para noticias con impacto difamatorio se determinará conforme a las circunstancias particulares de cada caso y a la luz de los criterios de negligencia antes esbozados. El balance de los intereses constitucionales en conflicto no puede arrojar otro resultado.

Por todo lo antes expuesto, se dictará sentencia revocando la emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Se devuelve el caso a dicho foro para ulteriores procedimientos compatibles con los principios aquí expuestos. Ante el hecho de que la parte demandante, por causas ajenas a su control, no ha tenido la oportunidad de realizar un descubrimiento de prueba adecuado, el juez de instancia abusó de su discreción al no posponer la consideración de la solicitud de sentencia sumaria o denegarla en esta etapa de los procedimientos.


Miriam Naveira de Rodón
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos L. Pérez Rosado y Otros

     Recurrentes

                           <u>RE-94-481</u>
                           CE-94-692

     v.

El Vocero de Puerto Rico, Inc.
y Otros

     Recurridos

SENTENCIA

San Juan, Puerto Rico, a 11 de octubre de 1999

Por todo lo antes expuesto, se dicta sentencia revocando la emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Se devuelve el caso a dicho foro para ulteriores procedimientos compatibles con los principios aquí expuestos.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre con el resultado sin opinión escrita. El Juez Asociado señor Corrada del Río disiente con opinión escrita. El Juez Asociado señor Rebollo López no interviene.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos L. Pérez Rosado y Otros

    Recurrentes

        v.                      RE-1994-481
                                   CE-1994-692

El Vocero de Puerto Rico, Inc.
y otros

    Recurridos

    Opinión Disidente emitida por el Juez Asociado señor CORRADA DEL RÍO

        San Juan, Puerto Rico, a 11 de octubre de 1999.

        Estos recursos nos brindan la oportunidad de expresarnos, por primera vez, sobre el alcance y propósito de la Regla 22(A) de las de Evidencia[7], referente a la admisibilidad de reparaciones o precauciones realizadas con posterioridad a la ocurrencia de un evento, a los fines de establecer negligencia o conducta culposa en relación con dicho evento.

        A la vez que discutimos la doctrina vigente en nuestra jurisdicción respecto a las acciones civiles por difamación o libelo incoadas por personas privadas, y la procedencia y funcionamiento en las mismas del mecanismo procesal de sentencia sumaria.

---

[7] 32 L.P.R.A., Ap. IV, R. 22.

32

Por no estar de acuerdo con la Opinión de la mayoría, disentimos.

Los hechos que dan lugar a los casos de autos se exponen a continuación.

I

El 6 de octubre de 1992, el periódico El Vocero de Puerto Rico, Inc. (en adelante "El Vocero") publicó una noticia reseñada por el periodista Miguel Rivera Puig, en la cual se señalaba al señor Ramiro Herrera como "el jefe del Cartel de Cali en Nueva York" y a quien se le habían confiscado varias propiedades debido al trasiego internacional de drogas. Junto a dicha noticia, El Vocero intercaló una fotografía con el rostro de una persona a quien el reportaje identificaba como el señor Ramiro Herrera. Sin embargo, dicha fotografía resultó ser en realidad del señor Carlos L. Pérez Rosado.

Al día siguiente, al percatarse de la situación, El Vocero publicó una nota aclaratoria en la cual hizo constar la equivocación cometida al identificar incorrectamente la fotografía del señor Pérez Rosado como la del señor Herrera.[8]

---

[8]Dicha nota aclaratoria expresaba lo siguiente:

El martes, 6 de octubre de 1992, en la página 2 de este rotativo se identificó incorrectamente la fotografía insertada en el recuadro del Sr. Carlos Pérez Rosado como la de Ramiro Herrera. Este último supuestamente vinculado al trasiego internacional de drogas.

Lamentamos grandemente el error cometido. El Sr. Pérez Rosado, propietario de Fine Designs, es una persona sumamente seria, amante de la ley y el orden. Además, es un comerciante muy distinguido y prestigioso de la Zona Metropolitana y de una reputación intachable.

continúa...

...continuación

Solicitamos disculpas al Sr. Pérez Rosado al igual que a su señora esposa e hijos por los

A raíz de la referida publicación, el 1ro de octubre de 1993, Pérez Rosado y su esposa, Pilar Moreno Rodríguez, ambos por sí, en representación de la sociedad legal de gananciales por ellos constituida, y en representación de sus hijos, presentaron una demanda ante el entonces Tribunal Superior, Sala de Bayamón, contra el periódico El Vocero y el periodista Miguel Rivera Puig. A través de dicha demanda, instaron una reclamación sobre libelo y calumnia al amparo de las disposiciones de la Ley de Libelo y Calumnia, Ley de 19 de febrero de 1902[9], y una acción por daños y perjuicios a tenor con las disposiciones del artículo 1802 del Código Civil de Puerto Rico[10]. Alegaron que el periódico El Vocero, de manera falsa, libelosa y negligente, había vinculado a Pérez Rosado con el narcotráfico al publicar de manera prominente una fotografía suya junto al reportaje de Herrera. Adujeron, además, que la publicación de la nota aclaratoria por parte del periódico no rectificó los daños causados. Por último, reclamaron una indemnización por los daños emocionales sufridos, así como por los daños causados a su reputación personal y a la de su familia.

Por su parte, los demandados contestaron la demanda aceptando la publicación del reportaje y de la fotografía de Pérez Rosado, así como la publicación de la nota aclaratoria. Sin embargo, negaron todas las alegaciones referentes a conducta maliciosa o negligente. Como parte de sus defensas afirmativas, adujeron, entre otras cosas, que la información había sido publicada al amparo de su derecho constitucional a

---

inconvenientes que les hemos causado.

[9] 32 L.P.R.A. secs. 3141 et seq.

[10] 31 L.P.R.A. sec. 5141.

la libertad de prensa y de expresión; y que el periodista

Miguel Rivera Puig no había tenido participación en el

escogido de la fotografía ni en su publicación.[11]

Por estipulación de los litigantes en la conferencia con

antelación al juicio, el artículo publicado fue admitido en

evidencia, así como la fotografía y la nota aclaratoria

publicada posteriormente. No obstante, la parte demandada

objetó el uso de la referida nota aclaratoria como prueba de

la negligencia imputada.

Tras varios trámites procesales, el 24 de febrero de

1994, la parte demandante presentó una moción de sentencia

sumaria parcial alegando que no existía controversia real

sustancial en cuanto al hecho de que El Vocero había cometido

un error en la identificación de la fotografía; y que siendo

la nota aclaratoria una admisión de parte admisible al amparo

de la Regla 62(A) de las de Evidencia[12], la misma había

establecido la negligencia imputada y requerida para

sustentar su causa de acción. En consecuencia, solicitó la

adjudicación de la negligencia por parte del periódico El

Vocero. Acompañó a su moción de sentencia sumaria la nota

aclaratoria publicada, la contestación a la demanda, un

requerimiento de admisiones que había sido dirigido a la

parte demandada, y la contestación a tal requerimiento.[13] La

parte demandada refutó los planteamientos presentados por los

---

[11]El 22 de febrero de 1994, la parte demandante desistió voluntariamente de su causa de acción contra el periodista Miguel Rivera Puig, lo cual fue declarado con lugar el 2 de marzo de 1994 por el foro sentenciador.

[12]32 L.P.R.A., Ap. IV, R. 62.

[13]Mediante la contestación al requerimiento de admisiones, la parte demandada aceptó nuevamente la publicación del reportaje y de la fotografía del demandante, así como la nota aclaratoria publicada posteriormente. Sin embargo, negó que la publicación hubiera sido hecha de manera negligente y/o maliciosa.

demandantes, y alegó que, a tenor con la Regla 22(A) de Evidencia, supra, la nota aclaratoria publicada resultaba inadmisible para establecer negligencia o conducta culposa por constituir evidencia de una reparación o precaución posterior.

Por otro lado, el 7 de marzo de 1994, la parte demandada cursó una oferta de sentencia a los demandantes al amparo de las disposiciones de la Regla 35.1 de las de Procedimiento Civil, supra, consintiendo a que se dictara sentencia en su contra por la suma de cinco mil ($5,000.00) dólares como indemnización total. Dicha oferta nunca fue contestada por los demandantes.

El 8 de abril de 1994, la parte demandada presentó una solicitud de sentencia sumaria a su favor señalando la inexistencia de hechos materiales en controversia. Sostuvo que el periódico había cometido un error en la identificación de la fotografía publicada, pero que ello había ocurrido sin que mediara previo conocimiento o grave menosprecio a la verdad. Argumentó, además, que la prueba presentada no había demostrado que la reputación del demandante hubiese sufrido menoscabo; y que la información publicada, aunque era falsa, no resultaba difamatoria y su contenido era de amplio interés público. Por último, reiteró su planteamiento al efecto de que, a tenor con la Regla 22(A) de las de Evidencia, supra, los demandantes no podían utilizar la nota aclaratoria para probar la negligencia imputada. La parte demandante se opuso a la solicitud del demandado alegando, en síntesis, que su causa de acción emanaba del artículo 1802 del Código Civil, supra, y que el criterio requerido para establecer la misma era el de negligencia. Reiteró su planteamiento referente a que dicha negligencia ya había sido reconocida mediante la

publicación de la nota aclaratoria; y añadió que la Regla 22(A) de Evidencia, supra, no resultaba de aplicación al caso de autos.

El 3 de agosto de 1994, el entonces Tribunal Superior, Sala de Bayamón (Hon. Zulma Zayas Puig), tras sopesar el derecho a la intimidad de los demandantes con el derecho de expresión y libertad de prensa envueltos en el caso, dictó sentencia sumaria a favor de la parte demandada y declaró sin lugar la demanda presentada. Ello, sin especial imposición de costas, gastos, ni honorarios de abogado.

En síntesis, concluyó dicho foro que la información publicada se encontraba revestida de un amplio interés público; que dicha información surgía en un momento en el que Puerto Rico se encontraba afectado por una alta incidencia criminal y un auge en el tráfico ilegal de drogas, lo cual requería la divulgación amplia de los mecanismos utilizados para contrarrestar las actividades delictivas; y que, no siendo libelosa de su faz la información publicada, y en vista de que la parte demandante no había cumplido con el peso de la prueba requerido para demostrar negligencia o el menoscabo sufrido a la reputación de los demandantes, de limitarse

la función de los periodistas en estos casos se vería afectado el interés público.[14]

No conforme, el 5 de octubre de 1994, la parte demandante presentó recurso de revisión (RE-94-481) ante este

---

[14] El 16 de agosto de 1994, la parte demandante presentó una moción solicitando determinaciones de hechos adicionales. Dicha moción fue declarada no ha lugar por el foro de instancia, archivándose en autos copia de su notificación el 6 de septiembre de 1994.

Tribunal señalando como único error el que el tribunal de instancia hubiese desestimado su causa de acción, a pesar de que la parte demandada, mediante la nota aclaratoria, había admitido su negligencia al publicar la fotografía de una manera falsa y difamatoria.

De otra parte, previo a la presentación del recurso ante nos, el 17 de agosto de 1994 El Vocero presentó un Memorando de Costas ante el foro sentenciador, y entre las partidas solicitadas incluyó la suma de $8,968.75 por concepto de los honorarios de abogado que había desembolsado con posterioridad a la oferta de sentencia realizada. La parte demandante se opuso a tal solicitud, alegando que la partida de honorarios de abogado no formaba parte de las costas del litigio por lo que no procedía su pago.

Mediante orden dictada el 12 de septiembre de 1994, el foro de instancia aprobó el Memorando de Costas presentado y ordenó el pago de la suma total de $1,947.25 a favor de la parte demandada por concepto de las costas incurridas durante el litigio. Sin embargo, denegó la petición referente a la partida por concepto de honorarios de abogado, tras concluir que la misma no constituía parte de las costas del procedimiento. Inconforme con esta determinación, acudió ante nos la parte demandada mediante petición de certiorari (CE-94-692) imputándole al foro sentenciador haber errado al denegar la concesión de una partida por concepto de honorarios de abogado tras entender que la misma no forma parte de las costas del litigio.

Ante la novedad de los planteamientos levantados en los recursos presentados, decidimos revisar. A tales efectos expedimos los correspondientes autos de revisión y certiorari, y procedimos a consolidar los mismos.

II

En su recurso ante nos, la parte demandante-recurrente sostiene que no procedía la desestimación decretada por el foro de instancia, ya que la nota aclaratoria publicada por el periódico El Vocero tuvo el efecto de establecer, por vía de admisión, la actuación negligente que da base a su causa de acción. Como principal argumento para sustentar su posición, aduce que no le asiste la razón a la parte demandada-recurrida al sostener que, a tenor con la Regla 22(A) de las de Evidencia, supra, dicha nota aclaratoria resulta inadmisible para probar negligencia, ya que la misma no es una reparación que, de haberse hecho con anterioridad al evento por el cual se reclama, hubiera tendido a hacer menos probable su ocurrencia.

Coincidimos con la parte recurrente a los efectos de que la Regla 22(A) de las de Evidencia, supra, no resulta de aplicación al caso de autos. No obstante, diferimos del planteamiento referente a que no procedía la desestimación decretada por el foro a quo en vista de que la nota aclaratoria aludida, de por sí, tuvo el efecto de establecer la negligencia imputada al periódico El Vocero. Veamos.

La Regla 22 de las de Evidencia[15], sobre evidencia pertinente afectada o excluida por políticas extrínsecas, establece varias excepciones al principio general dispuesto por nuestro derecho evidenciario referente a que toda aquella evidencia que sea pertinente será admisible.[16] Como su título indica, las excepciones dispuestas por dicha Regla obedecen a políticas extrínsecas a la búsqueda de la verdad que inclinan

---

[15]32 L.P.R.A., Ap. IV, R. 22.

[16]Véase 32 L.P.R.A. Ap. IV, R. 18.

la balanza en favor de la exclusión a pesar de la pertinencia que pueda tener la evidencia para demostrar determinado hecho. De esta forma se obtiene como resultado práctico el fomentar ciertas

acciones que se encuentran revestidas de un gran interés público.

Como parte de las exclusiones que establece la referida Regla 22, su inciso (A) dispone lo siguiente:

> **Reparaciones o precauciones posteriores.**
> Cuando después de la ocurrencia de un evento se toman medidas de reparación o precauciones **las cuales, de haber sido tomadas anteriormente, hubieran tendido a hacer menos probable la ocurrencia del evento,** evidencia de dichas medidas posteriores es inadmisible para probar negligencia o conducta culpable en relación con el evento. Esto no impide que tal evidencia sea admisible a otros fines pertinentes. (Enfasis suplido)[17]

Como podrá notarse, la disposición antes transcrita reglamenta la exclusión de aquella evidencia sobre reparaciones o precauciones tomadas con posterioridad a un evento, que se pretenda presentar en un pleito para establecer conducta negligente o culposa respecto a la ocurrencia de dicho evento. No obstante, dichas medidas cautelares podrán ser presentadas en evidencia para otros fines pertinentes. Es decir, la admisibilidad de la prueba que se pretenda presentar estará limitada de acuerdo a su alcance o al propósito para el cual se ofrezca.[18]

Lógicamente, la razón predominante para la referida exclusión de evidencia está predicada en consideraciones de política pública, a los fines de procurar una forma de alentar, o al menos no desanimar, el que las partes tomen las

---

[17]En lo pertinente, la Regla 407 de las de Evidencia Federal corresponde a nuestra Regla 22(A), supra.

[18]Véase la Regla 7 de las de Evidencia, 32 L.P.R.A. Ap. IV, referente al principio de admisibilidad limitada.

medidas cautelares de reparación o precaución con

posterioridad a la ocurrencia del evento que da base a la

reclamación, de suerte que se elimine una vulnerabilidad que

aparentemente existía o se procure una seguridad futura.  De

igual forma, se ha sugerido que el escaso valor probatorio o

la falta de relevancia de dicha evidencia para establecer

culpa o negligencia en un pleito, son factores que también

inclinan la balanza a favor de su exclusión.  Ello en vista

de que la inferencia que podría surgir sobre negligencia o

culpa de la realización de reparaciones o precauciones

posteriores resulta dudosa.  Véanse, Ernesto L. Chiesa,

Práctica Procesal Puertorriqueña, Vol. I, Evidencia,

Publicaciones J.T.S., Inc., 1979; J.B. Weinstein, Weinstein's

Evidence, 1996, Vol 2, sec. 407-02, págs. 407-13 – 407-14;

Moore's, Federal Practice, 2d ed., 1996, Vol. 10, sec.

407.02, pág. IV-152; McCormick on Evidence, Third ed., Nest

St. Paul, 1984, sec. 275, pág. 815; Wright and Graham,

Federal Practice and Procedure, St. Paul, Minn., West

Publishing Co., 1980, Vol. 23, Evidence sec. 5282, págs. 88-

99; y Notes of Advisory Committe on Proposed Rules, Rule 407,

28 U.S.C.A.[19]

Ahora bien, según se desprende claramente del texto de

la Regla 22(A), supra, para que determinada evidencia pueda

ser excluida al amparo de dicha disposición, se requiere: (1)

---

[19]Debemos señalar que existen tratadistas que han cuestionado el efecto que tiene esta Regla sobre la política pública que se pretende fomentar.  Ello en vista de que aún en los casos en que la persona desconozca la existencia de dicha disposición, actuará como mejor entienda.  Se ha sostenido que, independientemente de la existencia de dicha Regla, la sola idea de evitar futuros accidentes, propiciaría el que las partes tomaran las medidas pertinentes de reparación o precaución.  Véanse, Ernesto L. Chiesa, Práctica Procesal Puertorriqueña, Vol. I, Evidencia, supra, pág. 95; y Louisell and Mueller, Federal Evidence, N.Y., 1985, Vol. 2, sec. 163, pág. 381.

que la evidencia que se pretenda presentar se refiera a medidas de reparación o precaución; (2) que dicha evidencia se pretenda presentar con el propósito de probar negligencia o conducta culposa en relación con la ocurrencia de un evento; (3) que las medidas de reparación o precaución hayan sido tomadas con posterioridad a la ocurrencia del evento; y **(4) que dichas medidas, de haber sido tomadas con anterioridad al evento, hubieran tendido a hacer menos probable su ocurrencia**[20].

En el caso que nos ocupa, aunque la evidencia en controversia fue admitida por estipulación de las partes, la parte demandada reclamó su admisibilidad limitada, objetando su admisión a los fines de probar la negligencia imputada.[21] Esta evidencia consiste en una nota aclaratoria publicada por el periódico El Vocero con posterioridad a la publicación de la información alegadamente difamatoria, y mediante la cual dicho rotativo reconoció el error cometido al identificar incorrectamente la fotografía publicada ofreciendo sus disculpas por los inconvenientes causados. Por consiguiente, se puede concluir que la referida evidencia cumple con los primeros tres requisitos señalados anteriormente; a saber, constituye evidencia de una medida de reparación tomada con posterioridad a la ocurrencia del evento por el cual se reclama, y la cual se pretende utilizar por la parte demandante para probar la negligencia alegada.

---

[20]Sobre el particular, la Regla 307 del Proyecto de las Reglas de Evidencia de 1958, disponía que sería "[...] inadmisible evidencia de que una persona, natural o jurídica, ha tomado precauciones para evitar la repetición de un daño previo o la ocurrencia de un daño similar [...]".

[21]Véase el Informe Sobre la Conferencia Preliminar entre Abogados.

No obstante, nótese que se encuentra ausente el último requisito dispuesto expresamente por la Regla 22(A), supra. Ciertamente, en el caso de autos resulta claro que la evidencia de reparación consistente en la nota aclaratoria, de haber sido tomada con anterioridad al evento alegadamente difamatorio, **de forma alguna hubiera tendido a hacer menos probable su ocurrencia.**[22] Este no es el tipo de situación que contempla dicha Regla. En consecuencia, resulta ineludible concluir que las disposiciones de la referida Regla 22(A) no resultan de aplicación al caso de autos, y, por lo tanto, la evidencia en controversia no puede ser excluida al palio de la misma.[23]

---

[22]Por analogía, resultan de aplicación al caso de autos las siguientes expresiones del tratadista J. B. Weinstein, Weinstein's Evidence, supra, págs. 407-12 – 407-13, referentes a la Regla 407 federal:

> Post-event tests or reports have been admitted as being outside the scope of the Rule on the basis that they had been conducted or prepared for the purpose of investigating the cause of the accident, and could rarely be characterized as `measures' which, if conducted previously, would have reduced the likelihood of the accident. It is only if changes are implemented as a result of the tests that the goal of added safety is furthered, and it is only evidence

continúa...

...continuación

> of those changes that is precluded by the rule. (Enfasis suplido)

Véanse, además, Rocky Mountain Helicopters, Inc. v. Bell Helicopters, Inc., 805 F2d 907 (10th Cir. 1986); y Benítez-Allende v. Alcan Aluminio Do Brasil, S.A., 857 F.2d 26 (1st Cir. 1980). En ambos casos el tribunal determinó que la prueba que se pretendía excluir era admisible en evidencia, ya la misma, "by itself, would not have made the event less likely to occur".

[23]Para un estudio ilustrativo de situaciones en las que se ha aplicado la exclusión de medidas de reparación o precaución en el ámbito federal, véanse Guilbeau v. W.W. Henry Co., 85 F.3d 1149 (5th Cir. 1996) (el tribunal resolvió que resultaba inadmisible, por ser evidencia de una medida de reparación o precaución posterior, una etiqueta de advertencia adherida a un producto con posterioridad a la ocurrencia de un accidente por el cual se

III

Aclarado lo anterior, pasemos a determinar si procedía la desestimación sumaria decretada por el foro a quo.

Debemos comenzar señalando que en acciones de difamación como la de autos, nos enfrentamos a una colisión entre dos derechos que la Constitución de Puerto Rico reconoce como fundamentales: la libertad de prensa y la protección contra ataques abusivos a la honra y la reputación de las personas y a su vida privada y familiar. Constitución del Estado Libre Asociado de Puerto Rico, Art. II, secs. 4 y 8; Giménez Alvarez v. Silén Maldonado, 131 D.P.R. 91 (1992); Méndez Arocho et als. v. El Vocero de Puerto Rico et als., 130 D.P.R. 867 (1992) y Maldonado y Negrón v. Marrero y Blanco, 121 D.P.R. 705, 713 (1988). "[..] Los casos de difamación plantean esencialmente la necesidad de determinar el peso respectivo del interés en una ciudadanía debidamente

---

reclamó indemnización alegando que el referido producto no contenía advertencias adecuadas); Wood v. Morbark Industries, Inc., 70 F.3d 1201 (11th Cir. 1995) (resulta inadmisible evidencia de un cambio en el diseño de un producto realizado con posterioridad a la ocurrencia de un accidente por el cual se presentó una demanda alegando que el referido producto era extremadamente peligroso); Specht v. Jensen, 863 F.2d 700 (10th Cir. 1988) (caso en que se excluyó la presentación de un comunicado de prensa publicado en relación a un registro y allanamiento ilegal, en el cual se establecían las medidas que habían sido tomadas para prevenir que se repitiera ese tipo de conducta); y Bauman v. Volkswagenwerk Aktiengesells Chaft, 621 F.2d 230 (6th Cir. 1980) (en dicho caso se resolvió que, en una acción de daños por alegados defectos en la puerta de un automóvil, evidencia de ciertos cambios en el diseño de la puerta que habían sido realizados con posterioridad al accidente, constituían una reparación posterior inadmisible para establecer la negligencia imputada).

Es claro que en los casos citados anteriormente, las medidas de precaución o reparaciones realizadas con posterioridad al evento por el cual se presentó la reclamación, de haber sido hechas con anterioridad a dicho

continúa...

17...continuación

evento, hubieran tendido a hacer menos probable su ocurrencia, a diferencia del caso de autos.

informada, en fomentar el debate vigoroso sobre cuestión de interés público, de un lado, y el derecho a la intimidad, del otro". <u>Clavell</u> v. <u>El Vocero de Puerto Rico</u>, 115 D.P.R. 685, 691 (1984).

Al procurar un balance entre tales derechos fundamentales, reiteradamente hemos resuelto que para que prospere una acción de difamación por una persona particular en contra de un periódico por la publicación errónea de información difamatoria, se deberá establecer, no sólo que la publicación es falsa, sino que la imputación se hizo negligentemente, según se ha elaborado dicho criterio en el campo del derecho de daños y perjuicios.[24]  Además, la parte demandante deberá probar los daños reales que fueron causados.  De esta forma, se eliminó en esta jurisdicción la responsabilidad absoluta o sin falta que surgía de nuestra Ley de Libelo y Calumnia, supra.  Véanse, <u>Ojeda Ojeda</u> v. <u>El Vocero</u>, Op. de 26 de octubre de 1994, 94 J.T.S. 131; <u>Garib Bazán y otros</u> v. <u>Clavell y otros</u>, Op. de 18 de marzo de 1994, 94 J.T.S. 36; <u>Porto</u> v. <u>Bentley Puerto Rico, Inc.</u>, 132 D.P.R. 331 (1992); <u>Méndez Arocho et als.</u> v. <u>El Vocero et als.</u>, supra; <u>Villanueva</u> v. <u>El Vocero y otros</u>, supra; <u>Maldonado y</u>

---

[24]Al determinar si existe negligencia, el tribunal deberá considerar:

    1. La naturaleza de la información publicada, la importancia del asunto que trata y especialmente si ésta es difamatoria de su propia faz y puede preverse el riesgo de daños.

    2. Origen de la información y confiabilidad de su fuente.

    3. Razonabilidad del cotejo de la veracidad de la información tomando en consideración el costo en términos de dinero, tiempo, personal, urgencia de la publicación, carácter de la noticia y cualquier otro factor pertinente. <u>Méndez Arocho et als.</u> v. <u>El Vocero</u>, supra; <u>Villanueva</u> v. <u>El Vocero y otros</u>, supra y <u>Torres Silva</u> v. <u>El Mundo</u>, supra, pág. 425.

Negrón v. Marrero y Blanco, supra; Ocasio v. Alcalde Mun. de

Maunabo, 121 D.P.R. 37 (1988); González Martínez v. López,

118 D.P.R. 190 (1987); Oliveras v. Paniagua Díaz, 115 D.P.R.

257 (1984); y Torres Silva v. El Mundo, Inc., 106 D.P.R. 415

(1977). Cf. Romany v. El Mundo, Inc., 89 D.P.R.604 (1963).[25]

De otra parte, hemos sostenido que el mecanismo de

sentencia sumaria, en aquellos casos en que se encuentra

envuelta la libertad de expresión de un demandado, es

especialmente deseable, ya que la prolongación de estos

pleitos puede tener un impacto disuasivo ("chilling effect")

sobre el ejercicio de dicho derecho fundamental. Incluso,

hemos indicado que tal mecanismo es una parte integral de la

protección constitucional disponible a los demandados en esta

clase de litigio. Ello en vista de que su propósito es

acelerar la justicia que persigue el litigante obligando a la

parte contraria a presentar al tribunal las pruebas que tenga

para sostener las alegaciones que ha hecho. Lo cual, a su

vez, procura una solución justa, rápida y económica. Bonilla

---

[25]Debe advertirse que la protección contra expresiones difamatorias en nuestra jurisdicción surge del Artículo II de la Constitución de Puerto Rico, Secciones 4 y 8, y no

continúa...

...continuación

de un precepto estatutario. Razón por la cual la vigencia de la Ley de Libelo y Calumnia, supra, está condicionada a que su aplicación no sea incompatible con las disposiciones de nuestra Constitución y las interpretaciones judiciales del Supremo Federal acerca de la primera enmienda de la Constitución de los Estados Unidos. Villanueva v. Hernández Class, 128 D.P.R. 618 (1991) y Clavell v. El Vocero, supra.

En vista de ello, en Ojeda Ojeda v. El Vocero, supra, pág. 332, expresamos que se puede concluir que "[...] los casos relacionados con este tema se resolverán, como regla general, bajo la normativa de los daños y perjuicios extracontractuales; es decir, examinando si hubo un acto u omisión culposa o negligente, daños y la relación causal entre esos dos elementos, haciendo un balance entre la libertad de expresión y de prensa versus el derecho a la intimidad. [...]"

Medina v. Partido Nuevo Progresista, Op. de 13 de marzo de 1996, 96 J.T.S. 33; Méndez Arocho et als v. El Vocero, supra; y García Cruz v. El Mundo, Inc., 108 D.P.R. 174 (1978). Resultando, por tanto, que en los casos de difamación o libelo "[...] la etapa de la sentencia sumaria es una

etapa crítica de los procedimientos".  Villanueva v.
Hernández Class, supra, pág. 643.

La Regla 36.5 de las de Procedimiento Civil[26], dispone
que la sentencia sumaria deberá ser dictada inmediatamente
por el tribunal "[...] si las alegaciones, disposiciones
[deposiciones], contestaciones a interrogatorios y admisiones
ofrecidas, en unión a las declaraciones juradas, si las
hubiere, demostraren que no hay controversia real sustancial
en cuanto a ningún hecho material y que como cuestión de
derecho debe dictarse sentencia sumaria a favor de la parte
promovente. [...]"  En consonancia con dicha disposición,
hemos resuelto que en los casos de difamación o libelo en que
están envueltas personas privadas, a menos que el tribunal
determine que, a base de declaraciones juradas, deposiciones
u otra prueba documental, que la parte demandante cuenta con
prueba suficiente para establecer que medió negligencia, debe
dictarse sentencia a favor de la parte demandada.  Ello en
vista de que la suficiencia de la prueba para establecer
negligencia en tales casos, plantea una cuestión
estrictamente de derecho.  Véanse, Porto v. Bentley Puerto
Rico, Inc., supra; Méndez Arocho et als v. El Vocero, supra;
y García Cruz v. El Mundo, supra.

Es decir, "[...] el demandante tiene el deber de
producir prueba, en la etapa de la sentencia sumaria, sobre
hechos materiales respecto a los cuales no exista
controversia real sustancial y que, de ser probados en un
juicio plenario, establecerían la existencia de [negligencia]
por parte del periódico en la publicación [...]".  (Enfasis
suplido).  Villanueva v. Hernández Class, supra, pág. 644.

---

[26]32 L.P.R.A., Ap. III, R. 36.

En el caso de autos, la parte demandante-recurrente sostiene que la nota aclaratoria publicada, de por sí, tuvo el efecto de establecer la negligencia del periódico en la publicación de la información difamatoria. No obstante, a la luz de la normativa expuesta, entendemos que dicha parte no cumplió con su peso de la prueba, ya que no podía derrotar la moción de sentencia sumaria presentada por la parte demandada con la afirmación escueta de que la nota aclaratoria publicada tuvo el efecto de establecer la negligencia requerida.

La afirmación de la parte demandante pierde de vista que lo único que demuestra dicha nota aclaratoria es una rectificación del error cometido, lo cual la parte demandada aceptó en su alegación responsiva, o la intención de mitigar algún posible daño.[27] De forma alguna, dicha evidencia

---

[27]Adviértase que en Jusseff M. Galib Frangie y otros v. El Vocero, Inc., Op. de 6 de junio de 1995, 95 J.T.S. 71, pág. 924, señalamos que una rectificación de una información supuestamente falsa, podría considerarse como una indemnización "en específico" del alegado daño causado. Más aún, reconocemos la importancia de aclarar voluntariamente informaciones incorrectas y tratar de reducir así el impacto de dicha información sobre la reputación de los ciudadanos.

De otra parte, refiérase a E. P. Seelman, The Law of Libel and Slander, N.Y., 1964, Vol. 1, pág. 385, en cuanto sostiene que una nota aclaratoria ("retraction") reconoce el error cometido y puede ser presentada como parte de la defensa de mitigación de daños. Específicamente, se dispone lo siguiente:

> [...] Retraction is subsequent atonement; but inasmuch as it not only evinces repentance but also seeks to reduce the actual damage by published acknowledgment of the error and retraction of the charge, it may also tend to lessen the compensation.[...].

continúa...

...continuación

49

infiere o demuestra, por si sola, y a falta de otra prueba, que el periódico fue negligente al no ejercer el cuidado y diligencia necesaria, y que por tal razón se cometió el error en la publicación.  Más aún, el enfoque propuesto por los demandantes equivale al razonamiento equivocado de que la publicación de una información falsa o errónea, y la aceptación o reconocimiento de dicho error por la parte demandada significa, **ipso jure**, que se ha incurrido en negligencia. Ello equivaldría a imponer una responsabilidad absoluta a la parte demandada por la publicación errónea.

Un examen ponderado de los documentos que obran ante nos, demuestra inequívocamente que la parte demandante, en la etapa de la sentencia sumaria, se limitó a aseverar la existencia de negligencia en la identificación y publicación de la fotografía en controversia.  Sin embargo, no incluyó documento alguno, ni señaló algún hecho demostrativo con el cual, en su día, pudiera probar la negligencia aparte de la publicación errónea de la fotografía y la admisión de error de la parte demandada al publicar la aclaración.  No demostró que contaba con algún tipo de prueba que, de ser creída en un juicio plenario, pudiera demostrar, por ejemplo, que el periódico demandado incurriera en negligencia al obtener la fotografía, al no comprobar  o  cerciorarse  debidamente  en  cuanto  a  la

---

Véase, además, Lackland H. Blomm, Jr., Proof of Fault in Media Defamation Litigation, 38 Vand. L. Rev. 247, 384 (1985).

identidad de la misma, o al no investigar adecuadamente sobre el asunto antes de publicar el reportaje.[28]

En síntesis, no siendo difamatoria o libelosa de su faz la publicación en controversia[29], y en vista de que la parte demandante no puso al tribunal de instancia en posición de determinar que contaba con prueba de la cual se pueda inferir que medió negligencia al publicar la fotografía del demandante identificada como la de Herrera, resolveríamos que no existen controversias de hechos sustanciales que recaigan sobre hechos materiales que de alguna manera impidieran al tribunal de instancia dictar la sentencia sumaria solicitada por la parte demandada. Al no resolverlo así la Opinión mayoritaria, disentimos.

Finalmente, respecto a la libertad de prensa y de expresión, debemos recordar que el ejercicio de tales

---

[28]Adviértase que la parte demandante indicó que "[...] se reservó el derecho de deponer al director asociado de El Vocero, Sr. Germán Martínez Negroni, quien no compareció a su deposición, por alegadas razones de salud. Esta reserva de llevar a cabo dicha deposición se formuló en atención al hecho de que el periódico, para la época de los acontecimientos, no tuviere establecido un procedimiento para corroborar la veracidad de la información que recibe, incluyendo la adecuada identificación de fotografías, como la que nos ocupa. [...] La información objeto de la deposición señala la prueba de la parte demandante en apoyo a los reclamado en la demanda. Esta prueba está disponible para presentarse en vista en su fondo, si la adjudicación de la negligencia no se adjudicara por la vía sumaria."

Sin embargo, lo cierto es que, en la etapa de la sentencia sumaria, la parte demandante no demostró que contara con prueba a esos efectos, ni tomó dicha deposición para los fines de la sentencia sumaria, por lo que sus aseveraciones sobre lo que pudiera decir el deponente son especulativas. A la luz de la normativa que hemos expuesto, tal planteamiento no puede ser capaz de derrotar la moción de sentencia sumaria presentada por la parte demandada.

[29]Nótese, que de una simple lectura del reportaje publicado no puede sostenerse una conclusión de que la parte demandada hubiese incurrido en libelo o actuase de forma maliciosa. La fotografía y la noticia se referían a Herrera y no al demandante-recurrido. El error consistió en colocar la fotografía de éste en lugar de la de aquel, sin que se hiciera imputación de clase alguna al demandante-recurrido.

derechos "[...] debe hacerse en forma moralmente responsable. La convivencia civil y democrática presupone que no se abusará de los derechos.[...]" Aponte Martínez v. Lugo, 100 D.P.R. 282, 290 (1971).  "El periodismo es `un instrumento, un poder, una profesión, un género literario, una fuerza social y un derecho público'.  J. Cardó Guarderas, Periodismo, México, Ed. Diana, 1974, pág. 23; Johnstone, Seawski & Bowman, The News People, Illinois, U. Ill. Press, 1976, págs. 181-188."  Oliveras v. Paniagua Diez, supra, págs. 266-267.


BALTASAR CORRADA DEL RÍO
JUEZ ASOCIADO