# 2008 DTA 98

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE HUMACAO
PANEL V**

ELSIE ROSADO MORALES, *ET. ALS.*
Parte Apelada

v.

REBECA GARCÍA MORALES, *ET. ALS.*
Parte Apelante

Núm. KLAN-08-00423

San Juan, Puerto Rico, a 18 de julio de 2008

Panel integrado por su Presidente, el Juez Arbona Lago,
la Juez Cotto Vives y el Juez Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 24 de marzo de 2008, los Apelantes comparecieron oportunamente ante este Foro solicitando que revocáramos la Sentencia Parcial que dictó el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI) el 19 febrero de 2008. La sentencia parcial del TPI fue notificada el mismo día. Inconforme, el 5 de marzo de 2008, el Apelante solicitó reconsideración, la cual fue rechazada de plano el 7 de marzo de 2008 y notificada el 10 de marzo del presente. El 24 de marzo de 2008, los apelantes presentaron ante este Tribunal un recurso de apelación, donde se nos solicita que revoquemos la decisión del TPI. Sin el beneficio de la comparecencia de los Apelados, quienes incumplieron con el término y prórroga concedida para expresarse sobre la causa y por los fundamentos que a continuación expresamos, revocamos la recurrida sentencia parcial del TPI.

### I

La sucesión de Emiliana Morales Correa, Elsie Rosado Morales, Luis Alfonso García Morales y Miguel Ángel García Morales (Apelados) solicitaron ante el TPI que se dictara Sentencia Sumaria declarando nulas dos escrituras de usufructo donde en cada una se concede un derecho de usufructo a dos (2) nietos de la causante. Los Apelados alegaron que surgía de la demanda que la madre de los Apelados, Emiliana Morales Correa (Causante), falleció el 19 de septiembre de 2003, dejando bienes sujetos a partición hereditaria. Sostuvieron, además, que el esposo de la Causante padre de los Apelados, Alfonso García García, había fallecido para eso de 1974, y que al momento del fallecimiento de la Causante no se habían liquidado la sociedad legal de gananciales ni la comunidad hereditaria surgida como consecuencia de la muerte del padre de los Apelados y esposo de la Causante. Por consiguiente, según los Apelados, cualquier negocio jurídico que se realizara luego de la muerte del Sr. Alfonso García García requería la presencia de éstos en calidad de herederos y comuneros.

Los Apelados sostienen que entre los bienes que forman parte del caudal existen tres (3) inmuebles, de los cuales dos (2) fueron objeto de escrituras de usufructo perpetuo a favor de dos (2) nietos del causante, Scandia S. García García y Carlos H. Ritter García, aquí Apelantes. Las mencionadas escrituras de usufructo fueron otorgadas en abril de 2003 y septiembre de 2003, siendo esta última ocho (8) días antes de la muerte de la Causante.

Los Apelados argumentaron, además, que las mencionadas escrituras carecían de validez legal por las siguientes razones: 1) se otorgaron sin la presencia de los Apelados, que sustituyen como herederos al padre de éstos y esposo de la causante; 2) la causante Emiliana Morales Correa carecía de capacidad legal para llevar a cabo negocios jurídicos al momento de otorgar la escritura de usufructo; 3) el derecho a usufructo se otorgó de forma fraudulenta a favor de los nietos de la causante, toda vez que infringe el derecho de los Apelados a no permanecer en comunidad. Argumentan los Apelados ante el TPI que el haberle concedido a los Apelantes un derecho de usufructo burla la ley natural que indica que las personas mayores deben morir primero que las menores. Así las cosas, el constituir el usufructo en dos inmuebles a favor de los nietos tiene como consecuencia que los herederos de la causante se vean obligados a permanecer en comunidad hasta que los

usufructuarios mueran, violentándose así sus derechos hereditarios, según reclaman los Apelados. Aparte de lo anterior, los Apelados sostienen que los Apelantes no han cumplido con las obligaciones que le impone la ley y las escrituras sobre constitución de usufructo.

Por su parte, los Apelantes presentaron una Moción en Oposición a Sentencia Sumaria ante el TPI. Argumentó que la parte demandante no presentó ninguna declaración jurada, como ninguna otra prueba junto a su moción para establecer que las propiedades dadas en usufructo hayan pertenecido a la sociedad legal de gananciales constituida entre la Causante y el fallecido Alfonso García García. Argumentaron, al mismo tiempo, que no se presentó prueba sobre si dichos usufructos afectaban la legítima de los demandantes o prueba de que la Causante hubiese estado incapacitada para contratar al momento del otorgamiento del usufructo en controversia. Sostuvieron los Apelantes que los usufructos se constituyeron conforme a derecho y son válidos.

Los Apelados reiteraron su solicitud de sentencia sumaria el 8 de diciembre de 2005. En esta ocasión argumentaron que una de las condiciones impuestas a los usufructuarios Apelantes era el compromiso de mantener el inmueble en perfecto estado de conservación y observar allí una conducta acorde con la ley, moral y orden público. Según los Apelados, los Apelantes entraron en la posesión de los dos (2) inmuebles en controversia bajo las condiciones establecidas en los documentos constitutivos de usufructo y bajo las condiciones establecidas en nuestro Código Civil.

En vista de lo anterior, los Apelados sostuvieron que una de las controversias a resolver es si les correspondía a los Apelantes usufructuarios satisfacer las contribuciones territoriales impuestas sobre el valor de los bienes usufructuados y si procede la resolución del derecho de usufructo en consecuencia de no pagar los referidos impuestos. Al 3 de julio de 2005, la finca usufructuada a favor del Apelante Carlos H. Ritter García (Ritter) adeudaba $833.72 en contribuciones territoriales. Por su parte, para esa misma fecha, la Apelante Scandia S. García García adeudaba $2,877.77 en contribuciones.

Asimismo, los Apelados sostienen que el Apelante Ritter no había observado la conducta requerida en la escritura de constitución de usufructo. Surge del portal electrónico de la Administración de Tribunales que el Apelante Ritter cuenta con un historial delictivo activo, que más adelante discutiremos, por los pasados trece años.

Así las cosas, los Apelados solicitaron al TPI una segunda Moción en Apoyo de Sentencia Sumaria Parcial el día 5 de mayo de 2006. Alegaron que los usufructuarios Apelantes incumplieron con las obligaciones que les impone la ley y las impuestas en la escritura sobre constitución de usufructo, por lo que procede una declaración de nulidad de las escrituras de usufructo, según los Apelados. Destacaron los Apelados que el Apelante Ritter fue encontrado culpable de cometer varios delitos y condenado a cumplir prisión por largos años.

El 16 de octubre de 2007, los Apelados reiteraron su solicitud de Sentencia Sumaria. Expresaron los Apelados que, previo a discutir lo referente a la solicitud de que se dictara sentencia sumaria, que en el caso se había logrado un acuerdo transaccional que le puso fin a la controversia. Según los Apelados, la transacción se configuró en ocasión de una reunión celebrada con el Lic. Dennies Cuevas Silvagnoli, abogado de los Apelantes ante el TPI. Sostuvieron los Apelados que en la referida teleconferencia participaron los Apelantes, quienes, en presencia del Lic. Juan Enrique Santana Félix, abogado de los Apelados, prestaron su consentimiento al referido acuerdo extrajudicial. Se le informó sobre este incidente al Tribunal. Los Apelados argumentaron que se configuró un acuerdo extrajudicial que ponía fin al pleito.

Luego de haber discutido el derecho aplicable a la luz de las conversaciones ocurridas entre las partes, la parte Apelada afirmó que entre las partes surgió un contrato de transacción. Así las cosas, el Apelante alega que entre las partes existe un contrato transaccional válido que pone fin al litigio surgido entre las partes.

Los Apelados también sostuvieron que los fenecidos señores Alfonso García García y Emiliana Morales Correa, quienes contrajeron matrimonio bajo el régimen económico de la Sociedad Legal de Gananciales, adquirieron bienes muebles e inmuebles durante su matrimonio hasta la muerte del Sr. Alfonso García García en 1974. En consecuencia, sostienen los Apelados que se formó una comunidad de bienes compuesta entre la viuda Emiliana Morales Correa y sus tres (3) hijos —Miguel, Luis y Rebeca, todos de apellidos Morales García. Argumentaron los Apelantes que la Sociedad Legal de Gananciales nunca fue liquidada, hecho que no ha sido rebatido o impugnado por los Apelantes ante el TPI. Aun cuando la Sociedad Legal de Gananciales no había sido liquidada, según los Apelados, la Causante decidió libre y voluntariamente comparecer ante un notario y otorgar las Escritura de Compraventa de las dos (2) propiedades aquí en controversia. Sostienen los Apelados que las referidas escrituras fueron otorgadas en los años 1995 y 2001, luego de la muerte de Alfonso García García y sin que los herederos de éste comparecieran a los actos de compraventa.

Los Apelados alegaron que la comparecencia de los herederos era indispensable por las siguientes razones:

*"1. Por motivo de la muerte de Alfonso García García, se produjo una confusión entre los patrimonios de la Causante Emiliana Morales Correa y su esposo Alfonso García García.*

*2. La viuda ni los herederos tramitaron la declaratoria de herederos, ni la planilla de caudal relicto, obteniendo la carta de relevo de gravamen necesaria previo a que ella adquiriera nuevas propiedades inmuebles luego de la muerte del esposo.*

*3. Por motivo de que para los años 2001 y 1995, ya extinta la sociedad legal de bienes gananciales, la viuda adquirió las dos (2) propiedades aquí en controversia utilizando dinero de la comunidad de bienes."*

En fin, alegaron los Apelantes que la comparecencia de los herederos de Alfonso García García era indispensable para la validez del acto jurídico al que solamente compareció la Causante.

El TPI determinó que no existía controversia sobre hechos materiales y esenciales, por lo que procedió a aplicar el derecho aplicable mediante el mecanismo de sentencia sumaria. Sostiene el TPI que los documentos que fueran estipulados en la vista del 8 de octubre de 2007, la Certificación del Centro de Recaudación de Ingresos Municipales (CRIM) y la Certificación expedida por el Departamento de Corrección, establecen de manera inequívoca cuál es la situación contributiva de las propiedades en usufructo y cuál ha sido la conducta del demandado usufructuario Carlos H. Ritter García.

Sobre la conducta del usufructuario Carlos H. Ritter García, expresó el TPI que de una Certificación del Departamento de Corrección se desprende que el usufructuario estará confinado hasta el año 2034 por haber infringido en varias ocasiones la Ley de Armas y por haber cometido en más de una ocasión los delitos de robo, tentativa de asesinato y restricción a la libertad. Por tanto, según concluye sumariamente el TPI, el usufructuario no observó una conducta acorde con la ley, la moral y el orden público. Por tanto, sostiene el TPI, se incumplió la cláusula número seis (6) de la escritura constitutiva del usufructo, que establece lo siguiente:

*"La nuda propietaria manifiesta que constituye este derecho de usufructo a favor del usufructuario Carlos Humberto Ritter García, porque desea que éste, su nieto, continué en la posesión del inmueble mientras esté viva para su uso y disfrute y éste a su vez se comprometa a mantener el mismo en perfecto estado de conservación tal como lo haría el buen padre de familia observando allí una conducta acorde con la ley, la moral y el orden público."*

Los delitos fueron cometidos con anterioridad al otorgamiento del usufructo.

En adición, concluye el TPI que los dos Apelantes usufructuarios incumplieron la cláusula número tres (3)

de las Escrituras Sobre Constitución de Usufructo, por lo que procedía la resolución del derecho. La cláusula establece lo siguiente:

*"Los impuestos que gravaren el inmueble cuyo usufructo se cede en este instrumento correrán de cuenta y cargo del usufructuario."*

Según se desprende de la Certificación del CRIM no controvertida, la propiedad cedida en usufructo a la Apelante Scandia S. García mantiene una deuda contributiva ascendente a $3,888.98. Similarmente, la propiedad cedida en usufructo al Apelante Carlos H. Ritter García mantiene una deuda contributiva ascendente a $4,148.78.

Fundamentándose en la existencia de una deuda contributiva, el TPI determinó que las condiciones y obligaciones impuestas en la escritura de usufructo fueron violentadas, por lo que decretó la nulidad del derecho a usufructo concedido a los Apelantes por la Causante.

Así las cosas, inconformes, los Apelantes recurren ante nos invocando nuestro poder inherente para hacer justicia y hacen los siguientes señalamientos de Error:

*"1. Resuelva que el TPI erró al tomar como uno de sus fundamentos concluir que había confusión de bienes entre los demandantes y la causante Emilia Morales que impedía a esta última adquirir bienes con su propio patrimonio privativo.*

*2. Resuelva que el TPI erró al decidir que el co-demandado Carlos H. Ritter García incumplió con la cláusula 6ta [sic] de la Escritura de Usufructo, en atención a que fue encontrado culpable de varios delitos, cuando todos los delitos fueron anteriores al otorgamiento del usufructo, además cuando no se llevó prueba de ninguna índole de que éste hubiera cometido actos contra la ley, la moral y el orden publico en el seno del lugar dado en usufructo.*

*3. Resuelva que el TPI erró al decidir que el hecho de que hubiera una deuda sobre contribuciones en torno a la propiedad dada en usufructo al co-demandado Carlos R. Ritter García.*

*4. Resuelva que el TPI erró al decidir que ante únicamente el hecho de que hubiera una deuda sobre contribuciones en torno a la propiedad dada en usufructo a la co-demandada Scandia S. García García, ello constituían razones para declarar nulo el usufructo, cuando de un examen de la escritura, no contenía una cláusula resolutoria por tal razón y siendo ello de fácil solución."*

Examinado el expediente, procedemos a atender los errores señalados por los Apelantes.

## II

La sentencia sumaria es el mecanismo procesal mediante el cual se le confiere discreción al juzgador para dictar sentencia sobre la totalidad de una reclamación o sobre cualquier controversia comprendida en ésta, sin la necesidad de celebrar una vista evidenciaria. Véase Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. Para que proceda dictar sentencia por la vía sumaria, es imprescindible que, de los documentos que acompañan la solicitud o que obran en el expediente del tribunal, no surja controversia legítima sobre hechos materiales del caso y que, por ende, sólo reste aplicar el derecho. *Pérez Rosado v. El Vocero*, 149 D.P.R. 427 (1999).

*"El tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no procede"*. *Vera Morales v. Bravo Colón*, 161 D.P.R. 308 (2004).

Es norma reiterada que este mecanismo procesal es un remedio discrecional y que su uso debe ser mesurado. Sólo cuando el tribunal esté claramente convencido de la ausencia de controversia respecto a hechos materiales del caso y de que la vista evidenciaria es innecesaria, procederá dictar sentencia sumaria. Incluso, aun cuando no se presente prueba que controvierta la presentada por el promovente, no significa necesariamente que procede la sentencia sumaria. *Vera Morales v. Bravo Colón, ante*; *Sucesión Maldonado Ortiz v. Sucesión Maldonado Hernández*, res. el 9 de noviembre de 2005, **2005 JTS 172**.

*"En los casos en que no exista una clara certeza sobre los hechos materiales y esenciales de la controversia, no procede una sentencia sumaria." Sucesión Maldonado Ortiz v. Sucesión Maldonado Hernández, ante. De otro modo, el uso irrestricto del mecanismo de sentencia sumaria constituiría una violación al debido proceso de ley, pues "[t]omando en consideración que la sentencia sumaria es un remedio extraordinario y que su concesión está a discreción del tribunal, el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de su día en corte, principio elemental del debido proceso de ley". E.L.A. v. Cole Vázquez,* res. del 13 de abril de 2005, **2005 JTS 55**.

### III

Evaluamos el primer error señalado. Resulta esencial resolver si las escrituras de usufructo que otorgó la Causante se constituyeron válidamente. Los Apelados argumentaron ante el TPI que las escrituras carecían de validez legal debido a que: 1) se otorgaron sin la presencia de los Apelados; 2) la Causante Emiliana Morales Correa carecía de capacidad legal para llevar a cabo negocios jurídicos al momento de otorgar la escritura de usufructo. No hubo expresión alguna del TPI sobre estos planteamientos esenciales.

La realidad es que el TPI se limita a disponer de la controversia fundamentándose únicamente en un incumplimiento de las obligaciones impuestas en la escritura de usufructo. Específicamente, el TPI sostiene que un historial delictivo previo a la constitución de una escritura de usufructo, que impone la obligación de observar una conducta conforme a la ley, es un impedimento para que pueda perfeccionarse el negocio jurídico. Sostuvo el TPI en su sentencia sumaria parcial, además, que el atraso contributivo de la propiedad usufructuada es de tal magnitud que atenta contra el deber de la conservación de la cosa, según lo requiere nuestro Código Civil. 31 L.P.R.A. sec. 1501. Sin embargo, reiteramos, el planteamiento medular sobre si el negocio jurídico era nulo no fue atendido.

Este Tribunal ni el TPI está en posición de resolver la controversia sobre la nulidad de las controversiales escrituras de usufructo mediante sentencia sumaria, pues hay una controversia de hecho sobre si la propiedad dada en usufructo fue adquirida con dinero privativo de la causante o con dinero del caudal hereditario comunal. Si la propiedad dada en usufructo fue adquirida con dinero proveniente del caudal hereditario comunal, entonces los Apelados eran parte indispensable en el referido negocio jurídico, por lo que son nulas las escrituras de usufructo. Si la propiedad en controversia fue adquirida con capital privativo, como por ejemplo, se alega un premio de la loto por 2.3 millones de dólares, entonces no era indispensable la comparecencia de los Apelados al momento de la constitución de la controversial escritura de usufructo. Asimismo, era un hecho esencial y controvertido la capacidad legal de la Causante al momento de otorgar la referida escritura de usufructo. No surge de la sentencia sumaria parcial ni del expediente que haya prueba que nos asista a determinar la capacidad legal de la Causante al momento de efectuar el negocio jurídico en cuestión.

El TPI no está en posición de dictar sentencia sumaria parcial, ni este foro de avalarla. Debe el TPI atender la controversia sobre la validez legal o nulidad *ab initio* de las escrituras de usufructo en controversia. Si se constituyó válidamente la escritura de usufructo, procede entonces evaluar si hubo o no incumplimiento que justifique dejar sin efecto el derecho de usufructo.

Resulta innecesario discutir los demás errores señalados.

**IV**

Por los expresados fundamentos, revocamos la Sentencia Sumaria Parcial del TPI, disponiéndose que proceda conforme a lo resuelto por este Tribunal.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Lcda. María Elena Pérez Ortiz
Secretaria Tribunal de Apelaciones