ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| DIADEL MÁRQUEZ SUSAN FIGUEROA<br><br>Apelada<br><br>v.<br><br>GILBERTO POOL CONSTRUCTION, INC. Y OTROS<br><br>Apelante | **KLAN202400594** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Fajardo<br><br>Civil Núm. RG2022CV00373<br><br>Sobre: Cobro de Dinero; Incumplimiento de Contrato |
| --- | --- | --- |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 8 de octubre de 2024.

Comparece ante este foro, la Sra. Susan Figueroa (señora Figueroa o "la apelante") y nos solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo, notificada el 30 de abril de 2024. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por Gilbert Pool Construction, Inc., y otros (Gilbert Pool o "parte apelada"), en consecuencia, desestimó la demanda.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

## I.

El 29 de agosto de 2022, el Sr. Diadel Márquez y la Sra. Susan Figueroa presentaron una *Demanda* sobre incumplimiento de contrato contra Gilbert Pool Construction, Inc., Gilbert Pool, Inc., Gilberto Santa Castro, su esposa Fulana De Tal y la Sociedad Legal de

Número Identificador

SEN2024 _____

Gananciales compuesta por ambos, entre otras entidades desconocidas.[1] En esencia alegaron que, contrataron los servicios de la parte apelada para una construcción de piscina y jacuzzi en su propiedad. Indicaron que el precio acordado fue $29,000.00 dólares, no obstante, tuvieron que pagar $9,500.00 adicionales. Sostuvieron que, durante el proceso de construcción le informaron varias veces al Sr. Gilberto que no estaban satisfechos con el trabajo. Al finalizar la obra, arguyeron que acudieron al Sr. César de la Rosa para que brindara su opinión sobre los trabajos realizados, quien les indicó que había que realizar todo desde cero. Asimismo, esbozaron que le informaron al Sr. Gilberto sobre la opinión del Sr. César, y éste solicitó le dieran otra oportunidad, la cual no cumplió. Indicaron que la construcción la terminó la compañía Go Pool. Por ello, solicitaron que la parte apelada les devolvieran la cantidad de $33,450.00 que pagaron; más $27,894.13 por gastos incurridos de demolición y reconstrucción; $50,000.00 por daños y perjuicios; y $10,000.00 por honorarios de abogado, más costas.

El 4 de noviembre de 2022, la parte apelada presentó su *Contestación a la Demanda*.[2] En ella, plantearon que el Sr. Gilberto Santa compareció en calidad representativa de la compañía, y no en su carácter personal. A su vez, que no tenían una relación contractual con el Sr. Diadel Márquez. Además, señalaron como defensa afirmativa que aplicaba la defensa de *exceptio non adimpleti contractus*, puesto que, la apelante impidió que finalizaran la obra.

---

[1] *Demanda*, anejo I, págs. 1-7 del apéndice del recurso.
[2] *Contestación a la Demanda,* anejo IV, págs/ 17-23 del apéndice del recurso.

El 31 de enero de 2023, la parte apelada presentó una *Solicitud de Sentencia Sumaria Parcial*.[3] Mediante la cual, solicitó que fuera desestimada la demanda contra Gilbert Pool, Inc., el Sr. Gilberto Santa en su carácter personal, su esposa y la Sociedad Legal de Gananciales compuesta por ambos, puesto que, las únicas partes que suscribieron el contrato fueron el Sr. Gilberto Santa en calidad de Presidente de Gilbert Pool Construction Inc. y la Sra. Figueroa. El 15 de marzo de 2024, el foro primario notificó una *Sentencia Parcial*, mediante la cual declaró *Ha Lugar* la solicitud.[4]

Luego de varias incidencias procesales, el 9 de agosto de 2023, la parte apelada presentó una *Solicitud de Sentencia Sumaria*.[5] Mediante esta, alegó que las relaciones contractuales entre ellos y la señora Figueroa se vieron afectadas al haber interferencia de terceras personas, configurando justa causa para que Gilbert Pool decidiera rescindir del contrato. Sostuvo que, la interferencia de terceros en la obra original provocó que la parte apelada no pudiera completar su parte del contrato. Por lo tanto, solicitó que fuera desestimada la demanda en su contra.

En respuesta, el 21 de septiembre de 2023, la apelante presentó su *Oposición a Solicitud de Sentencia Sumaria*.[6] En síntesis, esbozó que la parte apelada incumplió con el contrato, provocándole daños y gastos adicionales no contemplados en la construcción realizada. Asimismo, indicó que habían surgido

---

[3] *Solicitud de Sentencia Sumaria Parcial,* anejo VI, págs. 32-57 del apéndice del recurso.
[4] *Sentencia Parcial*, anejo IX, págs. 72-85 del apéndice del recurso.
[5] *Solicitud de Sentencia Sumaria*, anejo XIII, págs. 108-127 del apéndice del recurso.
[6] *Oposición a Solicitud de Sentencia Sumaria*, anejo XIV, págs. 177-184 del apéndice del recurso.

conversaciones posteriores a la firma del contrato que tuvieron el efecto de modificar obligaciones originales. Por ello, esbozó que era necesario la celebración de un juico para que el tribunal aquilatara, mediante prueba testifical, cuales habían sido esas conversaciones. Además, de conocer cuál fue la intención de la apelante para solicitar la opinión profesional de un tercero.

Así las cosas y luego de evaluar las mociones presentadas por las partes, el 30 de abril de 2024, el foro primario notificó la *Sentencia* apelada.[7] Mediante la cual, declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria* presentada por Gilbert Pool. Al respecto, dispuso las siguientes determinaciones de hecho:

1. Gilberto Santa Castro es Presidente de Gilbert Pool Construction, Inc. corporación con Número Registro 427980. Sentencia Parcial del 14 de marzo de 2023.

2. El 18 de septiembre de 2020, Gilberto Santa Castro, en calidad de Presidente de Gilbert Pool Construction Inc., y la Sra. Susan Figueroa suscribieron un contrato de construcción de una piscina (en adelante "contrato"). Sentencia Parcial del 14 de marzo de 2023.

3. El contrato contiene dos páginas. Sentencia Parcial del 14 de marzo de 2023.

4. En el contrato se denominó como "Dueño" a Susan Figueroa y como "contratista" a Gilbert Pool Construction, Inc. Sentencia Parcial del 14 de marzo de 2023.

5. El contrato fue por la cantidad de $29,000.00.

6. El contrato fue dividido en fases por las partes.

7. La finalización de cada [f]ase conlleva la realización de un pago.

8. La primera fase era la firma del contrato y conllevaba un pago de $5,800.00.

9. La segunda fase consistía en realizar la excavación y conllevaba un pago de $7,250.00.

---

[7] *Sentencia*, anejo XVIII, págs. 191-207 del apéndice del recurso.

10. La tercera fase consistía en fundir el hormigón y conllevaba un pago de $10,150.00.

11. La cuarta fase consistía en fundir las aceras y conllevaba un pago de $4,350.00.

12. La quinta fase consistía en empañetar, el agregado expuesto, adoquines y cerámica e instalar el equipo de piscina. La misma conllevaba un pago de $1,450.00.

13. Asimismo, adopta por referencia un anejo denominado "TERMINOS Y CONDICIONES". Sentencia Parcial del 14 de marzo de 2023.

14. El primer párrafo y subsiguientes escritos de la segunda página del contrato suscrito el 18 de septiembre de 2020, por Gilberto Santa Castro, en calidad de Presidente de Gilbert Pool Construction Inc., y la Sra. Susan Figueroa dice lo siguiente:

Sentencia Parcial del 14 de marzo de 2023

15. Gilbert Pool Construction Inc. adoptó literalmente por referencia un modelo de términos y condiciones de Gilbert Pool Inc. Sentencia Parcial del 14 de marzo de 2023.

16. Cuando los términos y condiciones anejados al contrato dicen "Gilbert Pool Inc.", se refiere al contratista "Gilbert Pool Construction Inc.". Sentencia Parcial del 14 de marzo de 2023.

17. El contrato y los "TERMINOS Y CONDICIONES" tienen una marca de agua en cada página que dice "GILBERT POOL CONSTRUCTION, INC." Sentencia Parcial del 14 de marzo de 2023.

18. El contrato establece que todas las medidas son aproximadas.

19. Como aceptación de la fase, la parte demandante pagó las primeras 4 fases del contrato. El contrato establece que "[p]ara tener derecho a cualquier reclamación el dueño tendrá que haber pagado la cantidad total del contrato…".

20. El 19 de febrero de 2021 Gilbert Pool Construction Inc. comenzó la obra, abriendo el hueco, instalación de tuberías, varillas, entre otros. A su vez, los demandantes realizaron un segundo pago por la cantidad de $7,250.00 dólares correspondientes al 25% del total de la construcción, que fueron desglosados de la siguiente manera: un (1) pago por la cantidad de $6,050.00 dólares en efectivo y un (1) por la cantidad de $1,200.00 dólares en cheque. Contestación a la demanda de Gilbert Pool Construction Inc., inciso 14, Entrada Núm. 11 de SUMAC.

21. El 26 de febrero de 2021 Gilbert Pool Construction Inc. inició los trabajos de cemento, mano de obra, entre otros. Contestación a la demanda de Gilbert Pool Construction Inc., inciso 15, Entrada Núm. 11 de SUMAC.

22. Además, Susan Figueroa realizó un tercer pago por la cantidad de $10,150.00 dólares en efectivo.

23. Como parte de la obra de construcción, la parte demandante solicitó la instalación de drenajes para que el agua exterior no entrara a la piscina. Contestación a la demanda de Gilbert Pool Construction Inc., inciso 16, Entrada Núm. 11 de SUMAC.

24. No obstante, Gilbert Pool Construction Inc. no instaló el jacuzzi por apertura del molde e informaron que estarían realizando la instalación del jacuzzi cuando comenzaran los trabajos del piso. Contestación a la demanda de Gilbert Pool Construction Inc., inciso 17, Entrada Núm. 11 de SUMAC.

25. El 19 de marzo de 2021 Susan Figueroa realizó un cuarto pago por la cantidad de $4,350.00 dólares en efectivo correspondientes a la construcción, más la cantidad de $4,000.00 dólares en efectivo correspondientes a un calentador. Contestación a la demanda de Gilbert Pool Construction Inc., inciso 18, Entrada Núm. 11 de SUMAC.

26. El 31 de mayo de 2021 el Sr. Gilberto Santa Castro, en representación de Gilbert Pool Construction Inc., acudió a la residencia de los demandantes, donde se estaba realizando la construcción, para verificar el velo. La

demandante realizó una simulación con bloques para el estilo y diseño deseado. Contestación a la demanda de Gilbert Pool Construction Inc., inciso 20, Entrada Núm. 11 de SUMAC.

27. Gilbert Pool Construction Inc. ejecutó las primeras 4 fases del contrato.

28. Como aceptación de la fase, la parte demandante pagó las primeras 4 fases del contrato.

29. La demandante contrató un tercero para que interviniera y evaluara lo ya construido por Gilbert Pool Construction Inc. Buscó una segunda opinión para que evaluara los trabajos. El Sr. César de la Rosa fue la persona contratada por los demandantes para brindar su opinión con relación a los trabajos realizados en la piscina y jacuzzi.

30. Gilbert Pool Construction Inc. expresó su disponibilidad para poder realizar la obra a la complacencia de la demandada.

31. La demandante contrató otros terceros para que removiesen y destruyesen lo ya edificado por Gilbert Pool. Al igual que para que construyesen la obra de nuevo. Todo esto mientras se encontraba vigente el contrato entre las partes.

Cónsono con lo anterior, el foro *a quo* resolvió que la contratación de terceros por parte de la señora Figueroa, para desmantelar y reconstruir la obra de la parte apelada, mientras estaba vigente el contrato original, es un indicio claro para que Gilbert Pool decidiera rescindir del contrato. Añadió que, de la prueba documental surgió que la parte apelada completó las primeras cuatro (4) fases del contrato, puesto que, una vez eran completadas las fases, la apelante realizaba el pago establecido en el contrato. Por ello, no procedía la devolución del dinero pagado.

Asimismo, concluyó que el contrato firmado por las partes el cual establecía que "[p]ara tener derecho a cualquier reclamación, el Dueño tendrá que haber pagado la cantidad total del contrato y cualquier otra

adición", era un punto crucial en el caso. Debido a que, la apelante al no haber realizado el pago total estipulado en el contrato no tenía base para demandar a Gilbert Pool por incumplimiento contractual. Es por ello, que declaró *Ha Lugar* la solicitud de sentencia sumaria de la parte apelada.

En desacuerdo, 14 de mayo de 2024, la señora Figueroa presentó una *Solicitud de Reconsideración*.[8] Mediante la cual, reiteró la necesidad de que el foro primario celebrara un juicio para determinar si la parte apelada había cumplido o no con sus obligaciones, y cuál fue el efecto de la intervención de terceros.

En la misma fecha, Gilbert Pool presentó su *Oposición a "Solicitud de Reconsideración"*.[9] Sostuvo que, la moción de reconsideración de la apelante no cumplió con la Regla 47 de Procedimiento Civil, debido a que fue repetitiva, al exponer los mismos planteamientos ya rechazados por el foro primario.

El 15 de mayo de 2024, el foro primario notificó una *Resolución*, mediante la cual declaró *No Ha Lugar* a la reconsideración.[10]

Aun inconforme, el 14 de junio de 2024, la apelante presentó el recurso que nos ocupa y señaló los siguientes errores:

> ERRÓ EL [TPI] Y ABUSÓ DE SU DISCRECIÓN CUANDO DESESTIMÓ LA DEMANDA SUMARIAMENTE, A PESAR DE QUE EXISTÍAN CONTROVERSIAS DE HECHOS ESENCIALES, SOBRE LA INTENCIÓN DE LAS PARTES ANTES DEL CONTRATO Y DURANTE SU EJECUCIÓN, QUE REQUERÍAN SER ADJUDICADAS PREVIA CELEBRACIÓN DE UN JUICIO EN SU FONDO.

---

[8] *Solicitud de Reconsideración*, anejo XIX, págs. 208-213 del apéndice del recurso.
[9] *Oposición a "Solicitud de Reconsideración"*, anejo XX, págs. 214-221 del apéndice al recurso.
[10] Véase entrada núm. 78 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO ADJUDICÓ SUMARIAMENTE UN CASO CON CONTROVERSIAS DE HECHOS ESENCIALES, SOBRE LAS ACTUACIONES DEL DEMANDADO DURANTE LA EJECUCIÓN DEL CONTRATO, EN VIOLACIÓN AL PRINCIPIO JUDICIAL QUE PROMUEVE QUE LOS CASOS SE VENTILEN EN SUS MÉRITOS.

ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO ADJUDICÓ SUMARIAMENTE UN CASO CON CONTROVERSIAS DE HECHOS ESENCIALES, SOBRE EL EFECTO, SI ALGUNO, DE LA INTERVENCIÓN DE TERCEROS EN LA OBRA, EN VIOLACIÓN AL DEBIDO PROCESO DE LEY Y AL PRINCIPIO JUDICIAL QUE PROMUEVE QUE LOS CASOS SE VENTILEN EN SUS MÉRITOS.

El 15 de julio de 2024, Gilbert Pool presentó su alegato en oposición.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### -A-

Como es sabido, la moción de sentencia sumaria es un mecanismo procesal que permite la ágil disposición de casos sin la celebración de un juicio, siempre que no existan controversias genuinas de hechos materiales. *Birriel Colón v. Supermercado Los Colobos*, 2023 TSPR 120; *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 979 (2022). El propósito de esta moción es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico*, 2023 TSPR 80; *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335 (2021). Procede su concesión "cuando surge claramente que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia." *Oriental*

*Bank v. Caballero García*, 2023 TSPR 103; *Mejías v. Carrasquillo,* 185 DPR 288, 299 (2012).

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R.36.1, permite que una parte presente una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). En ese sentido, "un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable." *Íd.*, pág. 213; citando a Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. JTS, 2000, T.I, pág. 609.

A esos fines, la Regla 36.3 de Procedimiento Civil, *supra*, establece los requisitos de forma para la moción que se inste y su respectiva oposición. *Universal Insurance Company v. ELA*, 211 DPR 455, 472 (2023). El precitado cuerpo reglamentario preceptúa las formalidades que debe exhibir una moción de tal naturaleza: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se

encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3(a).

En tales escenarios, la parte opositora de la sentencia sumaria "tiene que cumplir con los requisitos de la Regla 36 de Procedimiento Civil." *Oriental Bank v. Caballero García*, supra. No debe adoptar "una actitud pasiva y descansar en las aseveraciones o negaciones que consigne en su alegación." *Íd.* Por tanto, enumerará los hechos materiales de buena fe controvertidos y aquellos sobre los que no media controversia. *Íd.* También, indicará los párrafos o páginas de la prueba documental que establezcan o impugnen cada hecho. *Íd.* Además, identificará "los argumentos del derecho aplicable por los cuales no se debe dictar la sentencia." *Fernández Martínez v. RAD-MAN San Juan,* supra, pág. 336. Ahora bien, cualquier duda no es suficiente para derrotar una moción de sentencia sumaria. *Oriental Bank v. Caballero García,* supra; *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.*, pág. 214.

Para determinar si existen controversias de hechos, "el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal." *Ramos Pérez v. Univisión*, supra, pág. 210; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007). En cuanto a los documentos presentados, éstos deben analizarse de la

forma más favorable para la parte promovida, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos. *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 734 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

En el proceso de disponer de una solicitud de sentencia sumaria, el juzgador no podrá tomar en consideración una declaración jurada suscrita por la parte adversa si su contenido es claramente incompatible con una versión de los hechos brindada anteriormente y el exponente no clarifica, a satisfacción del tribunal, la discrepancia entre las dos posiciones. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 440 (2013). En estas instancias opera un análisis bajo la doctrina de *sham affidavit*. Según el Tribunal Supremo de Puerto Rico, esta normativa aplica cuando:

> (1) [U]na parte ha sido examinada mediante preguntas precisas y libres de ambigüedad y ha respondido en detalle durante una deposición o ha prestado previamente una declaración clara e inequívoca bajo juramento; (2) al momento de oponerse a la solicitud de sentencia sumaria esa parte presenta una declaración posterior cuyo contenido es claramente incompatible con la versión ofrecida; (3) la incompatibilidad entre las dos declaraciones resulta evidente, manifiesta o patente, y no se trata de meras discrepancias de poca transcendencia o errores de buena fe; (4) no se ofrece explicación adecuada para la nueva versión, y (5) la declaración posterior no responde al descubrimiento de nueva evidencia, la cual a pesar de una diligencia razonable, no pudo descubrirse o no estuvo disponible al momento en que se prestó la declaración previa incompatible. *Lugo Montalvo v. Sol Meliá Vacation Club*, 194 DPR 209, 221-222 (2015); *SLG Zapata Rivera v. J.F. Montalvo*, supra, págs. 440-442.

En ese sentido, el tribunal rechazará una declaración subsiguiente si la inconsistencia entre las

dos declaraciones resulta evidente y no se ofrece una explicación adecuada para la nueva versión. *SLG Zapata Rivera v. J.F. Montalvo*, supra, págs. 440-441. De igual modo, no es permisible la utilización de este subterfugio para que una parte se retracte de su testimonio bajo juramento con el fin de evitar dictar sentencia sumaria contrario al objetivo de la Regla 36 de Procedimiento Civil. *Íd.* pág. 441.

Por otro lado, no es recomendable emplear el mecanismo sumario en aquellos casos en los cuales median elementos subjetivos de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia. *Segarra Rivera v. International Shipping Agency, Inc.*, supra, pág. 980; *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994). No obstante, amerita su concesión "si el juzgador queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que una vista en los méritos es innecesaria." *Birriel Colón v. Supermercado Los Colobos,* supra; *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 337.

De otra parte, nuestro esquema procesal permite solicitar una sentencia sumaria por insuficiencia de la prueba. *Ramos Pérez v. Univisión,* supra, pág. 218; *Pérez v. El Vocero de PR*, 149 DPR 427, 447 (1999). Cuando el reclamante "no cuenta con evidencia suficiente para probar un elemento esencial de su caso sobre el cual tiene el peso de la prueba, procede que se dicte sentencia sumaria para desestimar la demanda." *Medina v. M.S. & D. Química P.R., Inc.,* pág. 728. En tal escenario, el promovente debe demostrar que: (1) la vista es innecesaria; (2) el demandante no cuenta con

evidencia suficiente para probar algún hecho esencial, y (3) como cuestión de derecho, procede la desestimación de la reclamación. *Ramos Pérez v. Univisión,* supra, pág. 218.

En resumen, el tribunal debe abstenerse a otorgar este remedio cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico,* supra; *Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 335-336.

**-B-**

Los tribunales revisores se encuentran en la misma posición que el foro primario para determinar si procede una sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos,* supra. En estas instancias, ostentamos el deber de "examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias de la Regla 36.3." *Fernández Martínez v. RAD-MAN San Juan III-D, LLC,* supra, pág. 338; *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020). De resolver que los hechos materiales realmente están incontrovertidos, entonces procede "revisar si el foro primario aplicó correctamente el derecho." *Oriental Bank v. Caballero García,* supra; *Fernández Martínez v. RAD-MAN San Juan III-D, LLC,* supra. Cabe destacar que, el foro apelativo solo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González*

*v. M. Cuebas,* supra, pág. 114. No tenemos facultad para adjudicar hechos materiales y esenciales en disputa, pues esa tarea corresponde al foro primario. *Íd.,* pág. 115.

-C-

En nuestra jurisdicción rige el principio de la autonomía contractual y *pacta sunt servanda.* Las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y el orden público. Art. 1210 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3375;[11] *Betancourt González v. Pastrana Santiago*, 200 DPR 169, 182 (2018). Los contratos tienen fuerza de ley entre las partes contrayentes, quienes vienen obligadas a observar sus términos. Art. 1044 del Código Civil, *supra*, sec. 2994.

Los contratos en Puerto Rico se perfeccionan por el mero consentimiento, y desde ese momento, las partes se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, *supra*. Véase, *además, Betancourt González v. Pastrana Santiago,* supra. Un contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras a dar alguna cosa o a prestar algún servicio. Art. 1206 del Código Civil de Puerto Rico, *supra*, sec. 3371; *Demeter Int'l v. Srio. Hacienda,* 199 DPR 706, 726-727 (2018). Además, el Artículo 1028 del Código Civil de Puerto Rico, *supra*,

---

[11] Hacemos referencia al derogado Código Civil de Puerto Rico de 1930, pues los hechos del caso ante nuestra consideración ocurrieron con anterioridad a la vigencia del Código Civil de Puerto Rico de 2020.

sec. 3373, establece que "la validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes." El Tribunal Supremo de Puerto Rico ha expresado que en las obligaciones contractuales la ley primaria es la voluntad de las partes y los tribunales no pueden relevar a una parte de cumplir con lo pactado cuando es legítimo y no contiene vicio alguno. *De Jesús González v. A.C.*, 148 DPR 255, 271 (1999). De manera que, no debe relevarse a las partes de lo expresado y válidamente pactado, siempre que "dicho contrato sea legal y válido y no contenga vicio alguno". *Olazábal v. US Fidelity, Etc.*, 103 DPR 448 (1975).

Cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Art. 1233 del Código Civil, 31 LPRA sec. 3471; *Marcial v. Tomé*, 144 DPR 522, 536 (1997). De lo contrario, las cláusulas del contrato deben leerse de forma integrada e interpretarse las unas con las otras, resolviendo cualquier ambigüedad de modo que todas sus partes surtan efecto. Art. 1236 y 1237 del Código Civil, 31 LPRA sec. 3474 y 3475. Es decir, los términos de un contrato se reputan claros "cuando por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación." *SLG Francis-Acevedo v. SIMED,* 176 DPR 372, 387 (2009).

El derecho de reclamar la resolución de obligaciones recíprocas emana del Artículo 1077 del derogado Código Civil de 1930, 31 LPRA sec. 3052. La

referida disposición establece, en lo pertinente, lo siguiente:

> La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe. El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible. El tribunal decretará la resolución que se reclame, a no haber causas justificadas que le autoricen para señalar plazo. […] 31 LPRA sec. 3052.

En su interpretación de esta disposición, nuestro Tribunal Supremo ha expresado que, en cuanto a la resolución del contrato, se establece una condición resolutoria tácita en todo contrato bilateral, la cual opera *ex proprio vigore*. *Álvarez v. Rivera*, 165 DPR 1, 19 (2005). Es decir, que, si uno de los contratantes incumple, el otro puede dar por resuelto el contrato, sin necesidad de que un tribunal así lo declare. *Íd*.

Si quien incurre en incumplimiento, exige la satisfacción de la prestación que se le debe, la otra parte puede imponer la defensa del contrato incumplido. *Íd*., pág. 20; *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 742 (1987). A este principio general en materia de contratos recíprocos, se le conoce como *exceptio non adimpleti contractus*. *Álvarez v. Rivera*, supra, pág. 20. Esta, se fundamenta en la regla de la ejecución simultánea de las obligaciones recíprocas. *Íd*; Art. 1053 del derogado Código Civil de 1930, 31 LPRA sec. 3017.

-D-

El Artículo 1434 del Código Civil regula los contratos de obras y servicios, en el cual una de las

partes se obliga a ejecutar una obra, o a prestar a la otra un servicio por precio cierto.  31 LPRA sec. 4013. El contrato de arrendamiento de obra se define "como esencialmente uno de trabajo, mediante el cual una de las partes se encarga de hacer una cosa para la otra, mediante un precio convenido entre ello." *Master Concrete Corp. v. Fraya, S.E.,* 152 DPR 616, 623-624 (2000).  Sin embargo, no existe duda de que el contrato de obra es uno de carácter consensual, bilateral y oneroso, cuyos elementos característicos son la obra por realizarse y el precio.  *Íd.; Constructora Bauzá, Inc. v. García López*, supra, pág. 592.

El dueño de la obra tiene la obligación fundamental de pagar el precio de ésta en la forma, en la cuantía y en el tiempo convenido. *Master Concrete Corp. v. Fraya, S.E.,* supra. (citando a M. Albaladejo).[12]  "El contratista viene obligado a ejecutar la obra conforme a lo convenido en el contrato, a las reglas del arte de la construcción y a los usos o reglas profesionales." *Íd*. Si el contratista incumple con su deber, el dueño tiene derecho a pedir la resolución del contrato, aun hecha la obra, si resulta ser tan imperfecta que el dueño se ve impedido de usarla para el fin perseguido. *Íd*.

Una vez perfeccionado un contrato de arrendamiento de obra -como en todo tipo de contrato- las partes están obligadas por lo expresamente pactado y, de incurrir en dolo, negligencia o morosidad en el cumplimiento de sus obligaciones, responde por los daños y perjuicios causados. *Íd.;* Artículos 1210 y 1054 del Código Civil de 1930, 31 LPRA sec. 3375 y 3018.

---

[12] M. Albaladejo, *Derecho Civil*, 8va Ed., Barcelona, Ed. Bosch, 1989, pág. 49.

**III.**

En el caso de autos, la señora Figueroa alega, en síntesis, en sus tres (3) señalamientos de error que el foro primario incidió y abusó de su discreción al desestimar la demanda de manera sumaria cuando habían hechos esenciales en controversia. Sostiene que, el foro apelado debió celebrar un juicio para que aquilatara mediante prueba testifical, cuáles fueron las conversaciones habidas entre las partes, antes y durante la ejecución de la obra. A su vez, para que pudiera determinar cuál había sido el efecto de que tuviesen que intervenir terceros. Por ello, manifestó que, al haber discrepancias en las determinaciones de hechos y al foro primario dictar sentencia de manera sumaria, se apartó del estado de derecho aplicable al mecanismo de sentencia sumaria y abusó de su discreción.

Por su parte, Gilbert Pool, en primer lugar, esboza que la apelante ni tan siquiera ofreció una *scitilla* de evidencia para sustentar sus alegaciones en su oposición a la sentencia sumaria. Asimismo, reiteró que demostraron mediante prueba admisible en evidencia que la señora Figueroa estando vigente el contrato, contrato a otros para que removiesen y destruyesen lo ya edificado por la parte apelada. Por ello, alega que la apelante "trata de depender de meras alegaciones para argumentar que existen 'dudas y controversias' que impedían que se declarara con méritos la solicitud de sentencia sumaria." Así las cosas, sostuvo que podía rescindir del contrato de obra, debido a la intervención de terceros.

Antes de atender los señalamientos de error previamente reseñados, cabe precisar que, al momento de

revisar la concesión de una sentencia sumaria, nos encontramos en la misma posición que el foro de instancia. A tono con esta norma, debemos evaluar, en primer lugar, si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra*, y con los dispuestos en *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

Al evaluar los escritos presentados por las partes juzgamos que, en esencia, la parte apelada cumplió con los requisitos de la Regla 36.3 de Procedimiento Civil, *supra*, ya que en esta incluyó una relación concisa y enumerada de todos los hechos esenciales y pertinentes sobre los que alega no existe controversia sustancial y estableció una relación con aquella evidencia que sometió en apoyo de estos. Sin embargo, no podemos llegar a la misma conclusión en cuanto a la oposición presentada por la señora Figueroa. En síntesis, no cumplió con los requisitos de forma requeridos por la misma regla. Pero, más importante aún, en forma alguna controvirtió los hechos expuestos por la parte apelada en su moción dispositiva. Tales incumplimientos, no implican la concesión automática de la sentencia sumaria solicitada, ya que, según señalamos en el acápite del derecho aplicable de la sentencia sumaria, este remedio podrá dictarse a favor o en contra del promovente, según proceda en derecho.

Atendido lo anterior, nos corresponde entonces evaluar si existen hechos materiales en controversia que nos impidan dictar sentencia sumaria.

En su dictamen, el foro primario realizó treinta y una (31) determinaciones de hechos, las cuales

procederemos a resumir y adoptar en su totalidad. El 18 de septiembre de 2020, Gilbert Pool y la señora Figueroa suscribieron un contrato de construcción de una piscina, por la cantidad de $29,000.00. En este, indicaba que se dividiría por fases la obra y al finalizar cada fase conllevaba la realización de un pago. La parte apelada realizó cuatro (4) fases, y la señora Figueroa pagó al finalizar cada fase. No obstante, la apelante buscó la opinión de un tercero para que evaluara el trabajo realizado por Gilbert Pool. Aun así, la parte apelada expresó su disponibilidad de realizar la obra a la complacencia de la apelante. Finalmente, la señora Figueroa contrató los servicios de terceros para que removieran, destruyeran lo edificado por la parte apelada, y construyesen la obra de nuevo, todo mientras aun estaba vigente el contrato con Gilbert Pool.

Conforme lo establece el inciso (e) de la Regla 36.3, supra, establece que:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.
>
> El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3(e). Véase, además: *Pérez Vargas v. Office Depot /Office Max, Inc.*, 203 DPR 687 (2019).

Es decir, cuando no existe controversia sobre los hechos materiales que motivaron el pleito, solo resta que el foro de instancia aplique el Derecho a los hechos incontrovertidos. *Pérez Vargas v. Office Depot /Office Max, Inc.*, supra, pág. 699; citando a: *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014).

De otro lado, aún si diéramos por buena, la oposición a la sentencia sumaria interpuesta por la apelante -que como mencionamos, no lo es-, sus argumentos no nos persuaden. La señora Figueroa insiste en que el foro primario debía escuchar prueba testifical para que pudiera determinar las razones para la contratación de un tercero, y el efecto que tuvieron las conversaciones y acuerdos verbales antes y luego de la firma del contrato. Sin embargo, las determinaciones de hechos emitidas por el foro apelado están adecuadamente sustentadas en la prueba presentada junto a la moción de sentencia sumaria y no fueron impugnadas por la señora Figueroa.

Así pues, tras haber revisado la totalidad del expediente, evaluados los argumentos de las partes y aquilatar la prueba presentada, concluimos que no existen hechos sustanciales en controversia que impedían el dictamen por la vía sumaria.

De otra parte, en el contrato de arrendamiento de obras, "una de las partes se encarga de hacer una cosa para la otra, mediante un precio convenido entre ellos." *Empresas Capote, Inc. v. Tribunal Superior*, 103 DPR 765, 771 (1975). El contrato de obra, por lo tanto, es de carácter consensual, bilateral, y oneroso cuyos elementos característicos son la obra a realizarse y el precio. *Constructora Bauzá, Inc.*, supra, pág. 592.

Por su parte, el derecho de resolver obligaciones recíprocas está estatuido en el Artículo 1077 del Código Civil, *supra*, que establece:

> La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe.
>
> El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible. […]

Así pues, el Artículo 1077 del Código Civil, *supra*, establece una condición resolutoria tácita en todo contrato bilateral, la cual opera *ex proprio vigore*. En consecuencia, si uno de los contratantes incumple, el otro puede darlo por resuelto sin necesidad de que un tribunal así lo declare. *Flores v. Municipio de Caguas*, 114 DPR 521 (1983); *Sucn. Escalera v. Barreto*, 81 DPR 596 (1959); *Federal Land Bank v. Echeandía*, 48 DPR 320 (1935). En resumen, el dueño de la obra tiene la obligación fundamental de pagar el precio de ésta en la forma, cuantía y tiempo convenido; el contratista, por su lado, tiene la obligación de realizar y entregar la obra según lo pactado. *Master Concrete Corp. v. Fraya, S.E.*, 152 DPR 616 (2000).

Por tanto, la señora Figueroa no podía reclamar la devolución de un dinero, cuando Gilbert Pool realizó las primeras cuatro (4) fases establecidas en el contrato y éstas fueron pagadas por la apelante. El hecho que la parte apelada no haya podido completar la última fase, se debió a la contratación de terceros quienes desmantelaron y reconstruyeron la obra estando vigente el contrato de Gilbert Pool. Ante este escenario, la

parte apelada decidió rescindir del contrato, por lo que, ordenar la devolución del dinero daría lugar a un enriquecimiento injusto.

En virtud de lo antes expuesto, nos vemos compelidos a confirmar la *Sentencia* del Tribunal de Primera Instancia, la cual declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por Gilbert Pool.

### IV.

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones